JOHN FERGUSON, SUPERINTENDENT OF ELECTIONS OF HUDSON COUNTY, NEW JERSEY, PROSECUTOR, v. THOMAS J. BROGAN, STATUTORY OFFICER, AND GUSTAV BACH, CLERK OF HUDSON COUNTY, RESPONDENTS.

Argued January 17, 1934—Decided March 28, 1934.

Before Justices CASE, BODINE and DONGES.

For the prosecutor, *William E. Sewell.*

For the respondent, *Frank J. Reardon.*

The opinion of the court was delivered by

CASE, J. Prosecutor is the superintendent of elections of Hudson county, appointed and functioning under paragraphs 407 to 420, inclusive, of an act to regulate elections (Revision of 1930), *Pamph. L.* 1930, *ch.* 187, the legislation having been originally passed as *Pamph. L.* 1923, *ch.* 9. Prosecutor made application to the Chief Justice, sitting as a statutory officer, for an order to permit prosecutor to remove the seals from, and to examine the contents of, the ballot boxes of certain districts in Jersey City. The Chief Justice determined that he had no power to grant the application, predicating this conclusion upon the further finding that the superintendent of elections had no power to examine the contents of a ballot box. Those findings were incorporated within an order that is now before us for review under a writ of *certiorari.*

The power of the prosecutor, if it exists, to make such an examination is not to be found outside of paragraph 410 of the Election law. That provision is as follows:

"It shall be the duty of said superintendents and their assistants in order to enforce the laws of this state, regarding the conduct of elections to investigate all complaints relating to the registration of voters, and for that purpose the said superintendents and their assistants, shall have full power and authority to visit and inspect any house, dwelling, building, inn, lodging house or hotel and interrogate any inmate, housedweller, keeper, caretaker, owner, proprietor or

landlord thereof or therein as to any person or persons residing or claiming to reside therein or thereat; to inspect and copy any books, records, papers or documents relating to or affecting the elections, either general, special, primary or municipal, or the registration of voters in the custody and control of district boards, county boards, or the clerks or other officers of municipalities; to require every lodging housekeeper, landlord or proprietor to exhibit his register of lodgers therein at any time to such superintendent, his subordinates or any other person so designated by the said superintendent. Any person who neglects or refuses to furnish any information required or authorized by this act, or to exhibit the records, papers, or documents herein authorized to be inspected, or which are required to be exhibited, shall be guilty of a misdemeanor."

Prosecutor, insisting that appropriate authority is contained therein, relies upon a grammatical construction that we think is untenable. He reads the statutory authority thus:

"It shall be the duty of the said superintendents and their assistants, in order to enforce the laws of this state regarding the conduct of elections * * * to inspect and copy any books, records, papers or documents relating to or affecting the elections, either general, special, primary or municipal, or the registration of voters in the custody and control of the district boards, county boards or clerks or other officers of the municipality."

If this arrangement were correct, it would be the duty of the superintendent to inspect and copy any books, records, papers or documents affecting the elections, general, special, primary or municipal. Duty is not duty if the person burdened may use his discretion as to whether or not he will accept the obligation as a duty; consequently the word "any," as here used, must be given the comprehensive sense of "all." Otherwise, "any books" means what? As a duty the expression means nothing because there is no method designated in the statute by which one book or some books are to be selected from the sum total as the objective of the duty.

With what justification could an individual, or a court, point to a certain book and say to the prosecutor: "It is your duty to examine that book?" By what method of selection or elimination would the particularity of the duty be ascertained? We may not assume that the legislature in defining the duties of the superintendent of elections meant to make a forceless provision that it should be the duty of the superintendent of elections to do as he might wish regarding the inspection and copying of books. If, however, the word "any" is given the meaning of "all," the impracticability and the absurdity of the suggested statutory reading become too apparent for further discussion.

The relevant portions of the paragraph, joined, as we think the legislature intended, certainly as the reasonable collocation of words and ideas suggests, reads thus:

"It shall be the duty of said superintendents and their assistants in order to enforce the laws of this state regarding the conduct of elections to investigate all complaints relating to the registration of voters, and for that purpose the said superintendents, and their assistants, shall have full power and authority * * *. to inspect and copy any books, records, papers or documents relating to or affecting the elections, either general, special, primary or municipal, or the registration of voters in the custody and control of district boards, county boards, or the clerks or other officers of municipalities."

The practicability of the duty and the authority thus conferred and the complete consistency with remaining portions of the statute quite clearly demonstrate that the legislative intent was as we have indicated. The examination of books and other records is a power given to the superintendent for the purpose of enabling him to perform his duties regarding the registration of voters. Every word used and every power given throughout the entire paragraph is intelligible upon, and pertinent with respect to, the hypothesis that the enforcement of the laws of the state regarding the registration of voters was the end here sought. On the contrary there is, throughout the paragraph, no direct and, as we think, no

indirect reference to ballots or ballot boxes. Prosecutor argues that the words "books, records, papers or documents" are comprehensive of ballots. If that be true, the statutory language is unnecessarily and unusually blind; it would have been a simple matter to say "ballots" if ballots were meant. Ballots and ballot boxes are of the essence of an election, and elsewhere in the statute when the legislature refers to them, or either of them, it uses appropriate and unmistakable words.

The prosecutor does not assert that the proposed inspection of ballots was in any respect related to the registration of voters. The proofs do not so set up; and the fact is clearly otherwise. Therefore the prosecutor was without foundation for the authority he sought to exercise. The Chief Justice, in effect, decided that he, acting specially under the statute, could not give the prosecutor an authority that the statute itself did not give. And, of course, he could not. The Chief Justice has, and so has each associate justice, inferentially under paragraph 416 and specifically under paragraph 224, the authority to order a ballot box opened and the contents removed; not whimsically, however, or for an unauthorized purpose but "for satisfactory reasons shown and when the court may deem it necessary." It cannot be said that the desire of the prosecutor of the writ to make an inspection to which he was not by law entitled created either the satisfactory reason or the element of necessity which, in conjunction, were, under the statute, essential to the affirmative exercise of judicial discretion. However laudable and in the public interest the result that the prosecutor hoped to attain, he must circumscribe his methods of achievement to conform to his statutory powers.

The application was properly denied.

The order under review will be affirmed and the writ dismissed, with costs.