*27
 
 ROGERS, Justice.
 

 The State of Louisiana, through its Attorney General, and the Crime Commission, created by Act 13 of 1940, and the Departments of Conservation and Minerals brought this suit against Robert S. Maestri, formerly Conservation Commissioner, and the Canal Oil Company, Inc. The action, as disclosed by the prayer of the petition, is in declaration of forfeiture and for the money and property claimed to have been forfeited to the plaintiffs under Section 7 of Act 127 of 1912.
 

 The defendants excepted to the petition on the ground, among others, that it failed to disclose any right or cause of action. The trial judge sustained the exception of no cause of action and dismissed the suit. The State of Louisiana and the Department of Minerals have appealed from the judgment. The defendants have answered the appeal, and ask that the judgment appealed from be affirmed so far as concerns the exception of no cause of action, and that the judgment be amended so as to sustain certain other exceptions filed by them.
 

 The question presented on this appeal is: Can the appellants’ action be maintained on the allegations of their petition, to which we must look in order to understand the nature of plaintiffs’ demands?
 

 Plaintiffs allege, in substance, that the defendant, Robert S. Maestri, was Commissioner of Conservation for the State of Louisiana, and as such a salaried officer from December 1, 1929, to August 17, 1936, inclusive; that the Canal Oil Company, Inc., was created as a Louisiana corporation on December 21, 1934, the object of the corporation being to produce, refine, and market oil, gas, and other minerals; to purchase or lease lands and other property, and to do all things permitted to be done generally by corporations under the provisions of Act 250 of 1928; that on December 26, 1934, the defendant Maestri advanced to William Helis the sum of $225,000, and in May, 1935, the sum of $60,000 for the purpose of acquiring certain oil and mineral properties situated within this State.
 

 Plaintiffs allege, on information and belief, that the money so advanced was to be used, and was used, in exploiting the natural resources of the State, particularly oil or gas, or other liquid or gaseous hydrocarbon minerals by the Canal Oil Company in the New Iberia and Little Bayou fields in Iberia Parish and the Leeville field in Lafourche Parish; that the money advanced by the defendant Maestri was to be repaid and was actually repaid out of the profits made by the Canal Oil Company.
 

 Plaintiffs allege that from December 26, 1934, until October 11, 1940, the defendant Maestri owned a one-half interest, or 500 shares of the capital stock of the Canal Oil Company and that he received dividends from the Canal Oil Company during the period of his ownership of the stock amounting in the aggregate to the sum of $825,000. Plaintiffs allege that on November 30, 1938, certificate No. 8 for 500 shares of the Canal Oil Company, representing one-half of the total authorized capital
 
 *28
 
 stock of the company, was issued to and received by Maestri, and on October 10, 1940, he received and receipted for stock certificate No. 9, representing 500 shares of the capital stock of the Oil Company; that on October 15, 1940, certificate No. 10 for 500 shares of the capital stock of the Oil Company was issued to that company upon the surrender of stock certificate No. 9 held by Maestri and are now treasury shares. Plaintiffs allege that on December 31, 1940, a dividend of $200 on each outstanding share of stock, excluding treasury shares, was declared by the Board of Directors of the Canal Oil Company and that the dividend so declared was paid to William Helis, the owner of all outstanding stock, exclusive of treasury shares, and on that date and continuing to the present time, the undistributed and unappropriated surplus of the Canal Oil Company did and does exceed $200,000.
 

 Plaintiffs allege that betwe'en December 21, 1934, and August 17, 1936, and up- to the time of filing the suit, the Canal Oil Company produced and sold oil and gas from the sub-surface of the State of Louisiana, and that as shown by statements attached to the petition it produced and exploited oil in excess of the original allowable orders as set for the exploited fields.
 

 Plaintiffs allege that the Canal Oil Company, Inc., its officers and stockholders well knew that the defendant Maestri was Commissioner of Conservation and also a salaried officer of the Department of Conservation from December 21, 1934,- to and including August 17, 1936, and that the defendant Maestri was actively interested for personal gain in the operations and exploitations of the Canal Oil Company.
 

 Plaintiffs allege that the defendant Maestri, while a salaried officer of the Department of Conservation, due to and by his active interest in the exploitation of the natural resources of the State of Louisiana, with particular reference to the Canal Oil Company, was unjustly enriched in contravention of Section 7 of Act 127 of 1912 to the extent of a one-half interest in the Canal Oil Company, or 500 shares of the capital stock of that company now issued as treasury shares, as represented by stock certificate No. 10, and monies and dividends accruing to the one-half interest and stock received by the ’defendant Maestri from the Canal Oil Company from December 11, 1935, to and including September 30, 1939, in the sum of $825,000. ■
 

 Plaintiffs allege that the 500 shares of the capital stock of Canal Oil Company acquired by Maestri, together with all credits, dividends and monies accruing to the stock, have been, were and are forfeited to plaintiffs as of the date they were acquired by Maestri; that plaintiffs claim the ownership and right of possession of stock certificate No. 10 in the Canal Oil Company, and that a writ of sequestration is necessary, to protect their rights therein.
 

 Plaintiffs pray for citation of the defendants, Maestri and Canal Oil Company, Inc., and for judgment after due proceedings, decreeing a forfeiture in their favor and against the defendants for any and all rights acquired by Maestri while a sal
 
 *29
 
 aried officer of the Department of Conservation in contravention of Section 7 of Act 127 of 1912, and particularly the forfeiture of one-half interest in the defendant, Canal Oil Company, Inc., evidenced by 500 shares of its capital stock, and for a further judgment against the defendant, Maestri, in the sum of $825,000, with interest, as monies and dividends received by Maestri by reason of his ownership of a one-half interest in the Canal Oil Company, Inc., from the date of its incorporation until October 15, 1940.
 

 Plaintiffs pray for certain relief against the Canal Oil Company, Inc., which, for the purpose of considering the major issues presented on this appeal, it is unnecessary to set forth.
 

 In response to defendants’ exception of vagueness, the plaintiffs amended their petition by the following admission dictated into the record on the trial of the case: “That at all times pertinent to this lawsuit, i.e., December 21, 1934, to and inclusive of August 17, 1936, the fee simple title of the property covered by the Sabatier and Bernard leases owned by the Canal Oil Company in the Iberia Field and the Deramee-Nicoll, Cenac leases in the Lee-ville Field, was not in the State of Louisiana. The fee simple title to such lands was - privately owned when mineral leases thereon were acquired by the Canal Oil Company, Inc.”
 

 Section 7 of Act 127 of 1912, on which plaintiff’s suit is founded, reads:
 

 “Section 7. Be it further enacted, etc., That the Conservation Commission shall permit no salaried officer or employee to be actively interested in the exploiting for personal gain of any of the natural resources of the State, or to be employed by any person, firm or corporation engaged in the exploiting of any of the natural resources of-the State, under the penalty of dismissal from the service hereof and forfeiture of any rights sought to be,, acquired by said officer or employees.”
 

 Section 1 of Act 127 of 1912 provided that the Conservation Commission should consist of three members. By Act 66 of 1916 and Act 105 of 1918, Act 127 of 1912 was amended so as to provide that the Department of Conservation should be directed and controlled by one commissioner instead of three commissioners as set forth in the original act. This plan was adhered to by the Constitutional Convention of 1921 which, by the adoption of Section 1 of Article 6 of the Constitution, created the Department of Conservation and placed its employees under the direction and control of a Commissioner of Conservation to be appointed as elsewhere provided in the Constitution. By Section 18 of Article 5 of the Constitution, the Governor was authorized, by and with the advice and consent of the Senate, to appoint the commissioner for a term of four years.
 

 As shown by the allegations of the plaintiffs’ petition, the defendant Maestri was appointed and acted as the Commissioner of Conservation from December 21, 1929, until August 17, 1936. The' pertinent allegations of the petition, as amended by the admission to meet the exception of vagueness, are that while the defendant
 
 *30
 
 Maestri was Commissioner of Conservation, he violated Section 7 of Act 127 of 1912 by advancing $285,000 to William Helis to be used in exploring for oil or gas on privately owned property in the Iberia and Lafourche fields, for the repayment of which he was to look to the profits resulting from the venture; that in consideration of his advances he received 500 shares, or one-half of the capital stock of the Canal Oil Company, Inc., which was organized for the purpose of exercising certain mineral rights which the company acquired from private individuals; that the Canal Oil Company, Inc., received $285,000 from Maestri and issued to him the stock therefor with the knowledge that he was Commissioner of Conservation; that the venture proved to be a profitable one, and, in consequence thereof, Maestri was repaid the money advanced by him to the company and, as a stockholder, he also participated in the dividends declared and paid by the company. The clear implication of these allegations is that Maestri stood to lose the money advanced by him if the venture had proved to be unprofitable.
 

 Nothing is charged against Maestri other than his ownership of the stock in the Canal Oil Company, Inc., and the payment to him of the dividends earned thereby. Plaintiffs do not charge that he was an officer or director of the Canal Oil Company, or that he was employed by the company, or that he was in any way active in the administration of its affairs. Plaintiffs’ conclusion is, as set forth in the petition, that because Maestri owned stock in the Canal Oil Company which he acquired by virtue of large advances made to that company, he was “actively interested in exploiting for personal gain of any of the natural resources of the State.”
 

 There were no proration laws in existence when Maestri first advanced money to William Helis in December, 1934, and it is not charged that he had actual knowledge of the fact that the Canal Oil Company exceeded its allowables every month from July 28, 1935, to August 17, 1936, when his term of office expired. On the contrary, the charge is that knowledge of the company’s action should be imputed to Maestri merely because the officers and stockholders of the company knew that he was Commissioner of Conservation. Plaintiffs’ petition inferentially admits, and the fact is indisputable,' that Maestri had nothing whatever to do with the management of the Canal Oil Company, his interest therein being purely of a financial character, resulting from his ownership of a large portion of its capital stock. The fact that the allowables were fixed and were exceeded by the company negatives plaintiffs’ contention that Maestri personally was actively interested in assisting the Canal Oil Company to obtain excessive quantities of oil, since the fixing of allowables was within his discretion. If so' disposed, he could have fixed a larger allowable each month thereby benefiting the company to the extent of the increases.
 

 We have set forth, with some comment, the substance of plaintiff?’ charges purporting to show that defendant Maestri violated Section 7 of Act 127 of 1912, but, in the final analysis, the question presented for decision is not whether the section prohibits the Commissioner of Conservation
 
 *31
 
 from lending his money to, or of owning stock in, a private corporation engaged in extracting minerals under leases covering privately owned lands, in the operation and management of which corporation he takes no part and that without his knowledge the corporation exceeds its allowables, but whether the legislative provision applies at all to him.
 

 Counsel for plaintiffs argued orally, and the argument also appears in the' brief, that Section 7 of Act 127 of 1912, on which their action is predicated, is unambiguous and that if it is reasonably construed, it indicates the intention of the legislature in enacting the law to condemn and make unlawful the active interest of any officer (including the Commissioner) or employee of the Department in the exploitation of the natural resources of the State.
 

 If the legislative act is unambiguous, obviously it needs no construction. The words of the act speak for themselves. They alone best declare the intention of the lawmaker.
 

 Section 7 of Act 127 of
 
 1912
 
 declares : “That the Conservation Commission shall permit no salaried officer or employee to be actively interested in the exploiting for personal gain of any of the natural resources of the State, or to be employed by any person, firm or corporation engaged in the exploiting of any of the natural resources of the State, under the penalty of dismissal from the service hereof [the Commission] and forfeiture of any rights sought to be acquired by said officer or employees.” That is clear enough. The section itself in precise language limits the offenses, penalties and forfeitures to the subordinate officers and employees of the Commission and does not extend them to the Commissioners themselves. And the section, as written, is wholly consistent with other provisions of the statute.
 

 Act 127 of 1912 created the Conservation Commission to be composed of three members. Section 1 of the act provides that the “commissioners shall have the supervision and control over all employees in every branch of the service * *
 

 In the same section, the Commission is vested with the “authority to pay the expenses of any of its employees, officers or assistants * * * ”; also, “to employ such clerical and other assistants as may be necessary to officially transact its business and promote the good of the service, and fix the salaries.” Thus it will be seen that the Commissioners are the only persons authorized by the statute to appoint, employ, control, supervise, and dismiss the subordinate officers and employees of the Commission with or without cause. Where a salaried officer or employee of the Conservation Commission becomes actively interested in the exploiting for personal gain of any of the natural resources of the State, or accepts employment by any person, firm or corporation similarly engaged, the duty is imposed upon the Commissioners to dismiss that officer or employee. The statute leaves nothing to the discretion of the Commissioners in such a case.
 

 The Commissioners, after they are appointed by the Governor and confirmed by the Senate, can be removed from their
 
 *32
 
 office only for malfeasance, misfeasance, or incompetency upon charges brought before a court of competent jurisdiction. Act 127 of 1912 was amended by Act 66 of 1916 and Act 105 of 1918 so as to create a Department of Conservation under the direction and control of one Commissioner, instead-of a Conservation Commission composed of three members. The Commissioner thus provided for was appointed for four years and subject to removal only by the Governor.
 

 Sections 1, 18, and 20 of Article 5 and Sections 1 and 2 of Article 6 of the Constitution of 1921 changed the status of the Conservation Commissioner from that of a statutory officer to that of a constitutional officer, The defendant Maestri was appointed and served as Commissioner of Conservation up to August 17, 1936, under the provisions of the Constitution of 1921. He was a constitutional officer and could not have been removed except by impeachment as provided by Section 1 of Article 9 of the Constitution, by an address out of office by the Legislature, as provided by Section 3 of Article 9 of the Constitution, or by a court of competent jurisdiction for any of the acts enumerated in Sections 1 and 6 of Article 9 of the Constitution.
 

 If the Conservation Commissioner violates the duty imposed upon him by Section 7 of Act 127 of 1912 by permitting a salaried officer or employee of the Commission to be actively engaged for personal gain in the exploiting of any of the natural resources of the State, or by permitting such salaried officer or employee to be employed by any person, firm, or corporation similarly engaged, Section 1 of the statute and Sections 1, 3, and 6 of Article 9 of the Constitution provide the remedy without forfeiture. Saint v. Irion, 165 La. 1035, 116 So. 549.
 

 There is nothing in Section 7 that requires the Commissioner to dismiss himself and subject himself to the penalty of forfeiture of substantial rights for permitting his subordinates to do the things denounced by the statutory provision. Under the terms of Section 7, no penalties whatever are -imposed upon the Commissioner. The penalty of dismissal from the service and forfeiture of rights sought to be acquired are imposed solely on the subordinate salaried officers or employees appointed by him and under his direction and control.
 

 If'it had been the intention of the Legislature to make' the Commissioner subject to the offenses and penalties prescribed by Section 7 of Act 127 of 1912, as strenuously argued by counsel for plaintiffs, it would have been a simple matter for the Legislature to have expressed that intention by phrasing Section 7 to read as follows: “That neither the Commission, nor any of its members, nor any salaried officer or employee of the Commission shall be, or shall /become actively interested in exploiting, for personal gain, any of the natural resources of the State, under penalty of removal from office or dismissal from the service and forfeiture of any right sought to be acquired by such Commissioner, salaried officer or employee.”
 

 From our reading of Section 7 of Act 127 of 1912 and its related provisions, the amendatory acts, No. 66 of. 1916 and No. 105 of 1918, and the pertinent provisions of
 
 *33
 
 the Constitution of 1921, it is clear to us that it was not the intention of the Legislature to place the members of the Conservation Commission or their successor, the Conservation Commissioner, within the provisions of the section.
 

 We are admonished by Article 13 of the Civil Code that “when a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit.”
 

 Where the meaning of a statute is clear and unequivocal, the Court has nothing to do with its policy or impolicy. The duty of the Court in such a case is to expound and administer the law as it is written. Any other course would require the Court tó abandon its judicial function and assume the legislative function which, of course, it can not do.
 

 We do not find it necessary to pass on the other exceptions filed by the defendants.
 

 For the reasons assigned, the judgment appealed from is affirmed.