10 So.2d 213

STATE ex rel. WOMACK et al. v.

JONES et al.

No. 36881.

Sept. 30, 1942.

Eugene Stanley, Atty. Gen., W. D. Goff and W. C. Perrault, Asst. Attys. Gen., and J. H. Cassidy, of Bogalusa, for James A. Gremillion, Secretary of State, appellant.

J. Oliver Bouanchaud, P. G. Borron, John Fred Odom, H. Payne Breazeale, and James J. Bailey, all of Baton Rouge, for defendant, appellant.

James D. Womack, in pro. per., George M. Wallace, Wade O. Martin, Jr., and Kemble K. Kennedy, all of Baton Rouge, for plaintiff, appellee.

Frank J. Looney, of Shreveport, Chairman Democratic State Central Committee of Louisiana, amicus curiae.

O'NIELL, Chief Justice.

A primary election was held in the Nineteenth Judicial District, comprising the Parish of East Baton Rouge, for the purpose of nominating two candidates of the Democratic party for the two offices of judge of the district court, to be voted for in the general election to be held on November 3rd. There were four candidates for the nominations, namely, Judge Charles A. Holcombe and Judge James D. Womack, who are the incumbents, and Judge W. Carruth Jones and Judge Leslie A. Fitch. The candidates were not required to designate the one of the two judgeships to which each of them aspired. In such a case the primary election law, Act 46 of 1940, requires merely that each voter shall vote for two of the candidates for nomination for the two judgeships. There were 14,345 ballots cast, and hence a total vote of 28,690 for all of the four candidates. According to the official returns furnished by the commissioners to the parish executive committee, Judge Holcombe received 8,025 votes, Judge Jones 7,855, Judge Womack 7,530, and Judge Fitch 5,280. The committee met on the fourth day after the date of the primary, as required by the 76th section of the statute, and received from the chairman and approved the tabulated statement showing the result of the primary. Accordingly, the committee then adopted a resolution, proclaiming the result of the primary and declaring that Charles A. Holcombe, having received the highest number of the votes cast, and W. Carruth Jones, having received the next highest number, were the nominees of the Democratic party for the two judgeships. The committee therefore directed the Secretary of State to place the names of Holcombe and Jones on the official ballot as the nominees for the two judgeships. Within the two days allowed in paragraph (h) of section 86 of the statute, Judge Womack brought suit against W. Carruth Jones, Charles A. Holcombe, Leslie A. Fitch, the Democratic Executive Committee and its chairman, and the Secretary of State, to annul the resolution of the committee by which Judge Holcombe and Judge Jones were declared the nominees of the Democratic party for the two judgeships. Judge Womack prayed that the committee should be ordered to declare that Judge Holcombe alone was nominated for one of the judgeships and to order a second primary for the nomination of the other candidate for the other judgeship, in which second primary only James D. Womack and W. Carruth Jones should be voted on. Judge Womack prayed, in the alternative, and only in the event that the court should not hold that a second primary should be had between him and Judge Jones, then that a second primary should be held in which James D. Womack, Charles A. Holcombe, W. Carruth Jones, and Leslie A. Fitch, "being all of the candidates in the first primary (the said Leslie A. Fitch having failed to receive a majority), should be voted upon." Each of the defendants filed an exception to the jurisdiction of the court, an exception of no cause or right of action, and an answer, denying that there

should be a second primary. The judge ruled that the exceptions had reference to the merits of the case, because, if ·the resolution of the committee was violative of the primary law, as Judge Womack contended it was, he had a right of action and the court had jurisdiction to hear and decide his complaint. After hearing the case on its merits, the judge gave judgment for Judge Womack annulling the resolution adopted by the Executive Committee on September 12, 1942, so far only as the committee had certified the name of W. Carruth Jones as one of the nominees. The judge held that the resolution was valid so far as it certified Charles A. Holcombe as one of the nominees, and the judge ordered the committee to convene again and order a second primary to be held, in which James D. Womack and W. Carruth Jones should be the only candidates for the other judgeship, and ordered the committee to certify their names as such to the Secretary of State. All of the defendants have appealed from the decision.

 Section 80 of the act of 1940 is the section which provides for the holding of a second primary in· cases where no candidate has received a majority of the votes cast in the first primary. It is observed in the opinion rendered by the judge who heard this case—and rightly observed—that that section of the statute is badly worded, and that to interpret it literally would be a ridiculous interpretation, for it would require the holding of a second primary in every instance where there is a primary election. What the Legislature intended to say in section 80 is that if every candidate fails to receive a majority of the votes cast for the office for which he is a candidate in a primary election, a second primary shall be held, at which only the two candidates who received the highest number of votes for any one office in the first primary shall be voted on. In the third paragraph of this section it is declared that where it is necessary in the second primary to nominate two or more candidates for two or more offices of the same character there shall be twice as many candidates in the second primary as there are offices of the same character to be filled, and no more than twice as many candidates. The part of the section which is badly worded, as the trial judge has pointed out, is the declaration that, if it shall be found that any candidate has failed to receive a majority of the votes cast for the office for which he is a candidate in the first primary, a second primary shall be held. What the Legislature intended to say is that if it shall be found that every candidate has failed to receive a majority of the votes cast for the office for which he was a candidate in the first primary, there shall be a second primary. That part of this section of the law cannot be construed literally, because, as the trial judge has pointed out, it is not possible for both or all of the candidates for the same office to receive a majority of the votes cast in any primary, or in any other election. The court is obliged therefore to give this section of the law its true meaning, and to say that if there is not any candidate who has received a majority of the votes cast for the office for which he was a candidate in the first primary there shall

be a second primary. The error in the wording of the statute is as obvious as if the Legislature had said that the candidate receiving the smallest number of votes, instead of the largest number of votes, for the office for which he is a candidate shall be the nominee. Surely if that error had been made the court would be obliged to correct it. The function of the courts of justice is to interpret the laws so as to give them the meaning which the lawmaker obviously intended them to have, and not to construe them so rigidly as to give them absurd or ridiculous meanings.

The law books are full of authority for giving to the word "any", when it is used incorrectly, as in this instance, the meaning of the word "every" or "all". Several decisions to that effect are cited in 3 Words and Phrases, Perm. Ed., pp. 530 to 533. In the case of Roedler v. Vandalia Bus Lines, 281 Ill.App. 520, it was decided, in construing a statute, that the word "any" was equivalent to the word "every" or "all". In the case of the Catholic Order of Foresters v. State, 67 N.D. 228, 271 N.W. 670, 109 A.L.R. 979, the Supreme Court of North Dakota said that the word "any" had a diversity of meanings, its meaning in any particular case depending upon the context or subject-matter of the statute or document in which it is used. For other decisions to the same effect, see Egan v. Laemmle, 5 Misc. 224, 25 N.Y.S. 330; Falk v. Tax Commission, 218 Wis. 130, 259 N.W. 624; Tuten v. Bowden, 173 S.C. 256, 175 S.E. 510, 94 A.L.R. 1443; Mayor, etc., of City of Savannah v. Solomon's Lodge, No. 1, F. & A. M., 53 Ga.

93; Jones v. Whitworth, 94 Tenn. 602, 30 S.W. 736; In re Licenses for Sale of Used Motor Vehicles, Iowa, 179 N.W. 609; Southern Ry. Co. v. Gaston County, 200 N.C. 780, 158 S.E. 481; Coelho v. Truckell, 9 Cal.App.2d 47, 48 P.2d 697; Ferguson v. Brogan, 112 N.J.L. 471, 171 A. 685; 3 Words and Phrases, Perm. Ed., pp. 530 to 533. See also 3 C.J. pp. 230–249; and 3 C.J.S., verbo Any, p. 1400, where it is explained that the word "any" may be construed to mean "all", if that construction is necessary to make sense.

This error which appears in the 80th section of Act 46 of 1940—where the word "any" is used instead of the word "every"—has appeared in every primary election law that Louisiana has had; and the word "any" has been construed consistently by the Democratic committees, and by the courts, as meaning "every". It has never been doubted by any committee, or by any court, as far as we know, that there shall not be a second primary for any office unless every candidate for the office has failed to receive a majority of the votes cast for that office in the first primary. In Act 49 of 1906, which was the first primary law of this state, in the 3rd paragraph of section 25, on page 78, the error which is repeated in the 80th section of the act of 1940, appeared thus:

"In case any candidate should fail to receive a majority of the votes cast for the office for which he is a candidate, a second primary election shall be held," et cetera.

And in the 8th paragraph of the same section of the act of 1906, on page 79, the error is repeated, thus:

"That after the committee has met and proclaimed the results as hereinabove provided, and it shall be found that any candidate failed to receive a majority of the votes cast for the office for which he was a candidate, a second primary shall be held," et cetera.

The error was repeated, in the same words, in the 5th paragraph of section 25 (on page 86) of Act 35 of 1916, which was the second primary law of this state; and the error was repeated again, in the same words, in the 6th paragraph of section 27 (on page 199) of Act 97 of 1922; which was the last primary law previous to the act of 1940. And, as the trial judge has pointed out, the error is repeated again in the first paragraph of section 80 (on page 208) of Act 46 of 1940—thus:

"After the Committee has met and proclaimed the results as herein provided, and it shall be found that any candidate has failed to receive a majority of the votes cast for the office for which he was a candidate, * * * a second primary shall be held," et cetera.

In the case of State ex rel. Dobbins v. McDermott, 155 La. 211, 99 So. 41, 42, the court had under consideration the paragraph which, in Act 97 of 1922, is exactly the same as the paragraph which we have just quoted from Act 46 of 1940; and the court construed the paragraph thus:

"With respect to primaries for offices of the character here involved, the statute [Act 97 of 1922], section 27, p. 199, provides:

" 'That after the committee has met and proclaimed the results as hereinbefore provided, and it shall be found that any candidate failed to receive a majority of the votes cast for the office for which he was a candidate, a second primary shall be held. * * *'

"This, of course, requires that to be nominated in the first primary a candidate must obtain a majority of the votes cast for the office, which no one received in this case."

We must bear in mind that it was in the light of that judicial interpretation that the Legislature, in the session of 1940, repeated literally the paragraph which was interpreted by this court in the case of State ex rel. Dobbins v. McDermott.

There is no provision in the act of 1940 for the holding of a second primary in a case where there are only four candidates for nomination for two similar offices, and where each one of the two—or the three—highest of the four candidates has received a majority in the first primary.

In the second paragraph of section 80 of the act of 1940 it is declared:

"In the second primary only the two highest candidates in the first primary shall be voted on."

That paragraph, of course, has reference only to candidates for one and the same office.

In the third paragraph of section 80 of the act of 1940 is a provision which was not in Act 97 of 1922, which governed the case of State ex rel. Dobbins v. McDermott. That provision, in the act of

1940, is that where in a second primary it is necessary to fill by nomination two or more offices of the same character there shall be twice as many candidates, and not more than twice as many candidates, in the second primary, as there are positions to be filled. That provision in the statute is not applicable to a case where there are only four candidates for two similar offices to be filled by nomination in the first primary, as in the present case. The reason why that provision is not applicable to a case where there were originally only four candidates for nomination for two similar offices is that the statute would then require merely the holding of another primary for the same four candidates for the same two nominations. That provision in the statute conforms with the decision rendered by this court in the case of State ex rel. Dobbins v. McDermott, in 1924. In that case there were eleven candidates for nomination for the offices of two members of the Legislature from the Third Ward in New Orleans; and, as none of the candidates received a majority of the votes cast in the first primary, it was necessary to have a second primary; and the question was whether all except the three highest candidates, or all except the four highest, were eliminated as a result of the first primary. The committee ruled that only the three highest candidates in the first primary should be permitted to be candidates in the second primary. Dobbins, who was the fourth highest candidate in the first primary, sued to compel the committee to certify his name also as a candidate in the second primary. A majority of the members of the court ruled that

Dobbins was right in his contention that the four highest candidates in the first primary should be allowed to be candidates in the second primary. But, in a case where there are only four candidates for two offices of the same character in the first primary, and where two or more of the four candidates receive a majority of the votes cast, there is no reason why there should be a second primary, either among all four candidates, or between the second and third highest candidates. Immediately after that provision in the third paragraph of section 80 of the statute, it is declared that in the event that one of the candidates entitled to be voted for in the second primary should die or withdraw, then the remaining candidate for that office who received the highest number of votes shall be declared the nominee, and only the names remaining shall be voted on. That provision, necessarily, has reference only to a case where no candidate has received a majority of the votes cast in the first primary, and where, therefore, it is necessary to have a second primary. In the present case there is no necessity for a second primary, because the two highest of the three candidates who received a majority in the first primary were entitled to be declared the nominees for the two offices to be filled. The last candidate, Leslie A. Fitch, recognized that fact when he voted as a member of the committee to declare the two highest candidates, namely, Charles A. Holcombe and W. Carruth Jones, the nominees for the two offices. Fitch did not waive any right to be a candidate in a second primary. He had no right to be a candidate in a second

primary, because there was no occasion for the holding of a second primary. A second primary with Fitch and the three other candidates running would be merely a repetition of the first primary. No such proceeding was contemplated by the Legislature in making provision for a case like State ex rel. Dobbins v. McDermott, where there were more than twice as many candidates as there were offices to be filled in the first primary, and where no candidate received a majority of the votes cast.

In a decision rendered by the Court of Appeal for the First Circuit on February 10, 1920, in the case of Ralph W. McBurney v. John McGregor, et al. [not reported], the essential facts were exactly the same as in this case. There were four candidates for nomination for the two offices of members of the House of Representative from the Parish of East Baton Rouge. The candidates were Carruth Jones, who received 1869 votes in the first primary, Dan D. Cline, who received 1591, Ralph W. McBurney, who received 1485, and Leslie A. Fitch, who received 976. Therefore each one of the three highest candidates received a majority of the votes cast in the first primary—just as they did in the present case. The Democratic Executive Committee of the parish met and tabulated the returns and declared that Carruth Jones and Dan D. Cline, having received the greatest number of votes, were the nominees for the two offices. McBurney, who was the third highest candidate, but who also had received a majority of the votes cast, brought suit to compel the committee to declare only Jones the nominee for one of the offices,

and to order a second primary to be held between Cline and the plaintiff, McBurney, for nomination for the other office. The district court rejected McBurney's demand, and the court of appeal affirmed the judgment. In deciding the case the court of appeal, in an unanimous opinion, said:

"It is admitted by the parties to this suit that a majority of the votes were received by plaintiff [McBurney], Carruth Jones and D. D. Cline, defendant. Although plaintiff [McBurney] received a majority, the returns show that Cline had gotten in the primary one hundred and six votes more than were cast for plaintiff [McBurney], and Jones a still larger plurality of the majority over plaintiff [McBurney]. As two candidates had to be nominated, and not three, the committee was driven to the necessity of making a decision upon the face of the returns between them, as they had all received a majority, which precluded the possibility of ordering another primary under the provisions of the primary law of 1916. If no majority had been obtained, a second primary could have been demanded for a final settlement of the contest between the parties, and only in that event. Such being the situation the committee adopted the only course which we think could have been pursued under the circumstances, and that was to declare Carruth Jones and Cline the nominees, because they had not only received a majority of the votes but also a larger number than had been cast for plaintiff [McBurney]. In adopting this course we fail to see where the committee has violated the provisions of Act 35 of 1916 or

the legislative purpose as expressed in that statute. So finding, we do not think we are called upon to interfere with the action of the committee."

The trial judge in the present case conceded, in the opinion which he dictated to the court stenographer, that he would feel constrained to follow the opinion in the case of McBurney v. McGregor but for the fact that Act 35 of 1916, under which that case was decided, did not contain the provision which appears in section 76 of the Act of 1940, requiring the committee to certify the name "or names" of the person "or persons" receiving the greatest number of votes. The trial judge points out that that provision in the act appeared for the first time in Act No. 8 of the Second Extra Session of 1934, amending section 27 of Act 97 of 1922. The fact that this amendment of the law was made subsequent to the deciding of McBurney v. McGregor only adds to the logic and force of that decision as authority. Before the amendment was made there was some reason to doubt that the committee should certify the names of two persons as having received the greatest number of votes, in a situation such as we have here; but the subsequent amendment of the statute eliminated all doubt that the committee should certify the two or more persons having received the greatest number of votes, when there were two or more nominations to be made, and when two or more persons received a majority of all of the votes cast in the first primary. There is no reason therefore why the decision in McBurney v. McGregor should not be regarded as authority.

The trial judge in this case rested his decision upon his interpretation of section 76 of the act of 1940. That section is composed of two paragraphs, the first paragraph having reference, specifically, to nominees for United States Senators, Congressmen and state officers voted for throughout the entire state or in Congressional Districts, and Supreme Court Districts, or for any other state board or commission, or for any state officer whose election may be provided for by law. The second paragraph has reference to all other primary elections, which, apparently, means all primary elections for the nomination of local candidates, such as for district offices or parish offices.

It is contended by the attorneys for Judge Womack that the office of district judge is a state office and therefore that the returns on which the committee proclaimed the results of the primary election should have been tabulated and compiled by the Secretary of State, and by him forwarded to the chairman or secretary of the committee. If the office in contest is not a state office, but a local office, in the meaning of the statute, the returns of the election should have been furnished directly to the committee, as they were furnished in this case, by the commissioners of election. Judge Womack therefore, in his petition in this case, contended primarily that the tabulating and compiling by the committee, of the returns received directly from the commissioners of election, was not a valid tabulating or compiling of the returns, and that the Secretary of State should be ordered to forward to the committee the

returns tabulated and compiled by him, and that the committee should reconvene and again proclaim the results from the official returns as tabulated and compiled by the Secretary of State. The trial judge concluded that there was no necessity for deciding whether this was a state office or a local office, within the meaning of the statute, and that it was not necessary to decide whether the returns should have been compiled and tabulated by the Secretary of State and furnished to the committee; because the result of the tabulation and compilation which was made by the Secretary of State produced substantially the same results which had been proclaimed by the committee from the compilation and tabulation of the commissioners of election. In fact, all of the parties to this suit made the admission, which was dictated to the court stenographer during the trial of the case, that the returns from the Secretary of Sate would show that, in the first primary, Leslie A. Fitch received 5,207 votes, that James D. Womack received 7,530 votes, that W. Carruth Jones received 7,865 votes, and that Charles A. Holcombe received 8,030 votes. The judge who heard this case therefore held that it would be only a waste of time for the court to order the Secretary of State to compile the returns and certify them to the committee, and to require the committee to meet again and proclaim the results. The judge was right in so holding.

The judge rested his decision in this case upon his interpretation of section 76 of Act 46 of 1940, and upon his opinion that there was a grammatical error, and hence a hiatus in the law, in the phrase in the first paragraph of that section of the statute, "the person, or persons, shown by the certification of the Secretary of State as having received the greatest number of votes", and also in the clause "they shall certify the name, or names, of such person, or persons, to the Secretary of State." The judge found that the only difference between the first and the second paragraph in section 76 of the statute is that the first paragraph refers to the state offices mentioned therein, and the second paragraph refers to the so-called local offices, such as district offices and parish offices.

■ The judge therefore held that the provision in section 76 of the statute, requiring the committee to declare the nomination of the "person, or persons," having received the greatest number of votes, and the provision requiring that the committee "shall certify the name, or names, of such person, or persons, to the Secretary of State", had reference to the office of district judge, whether it should be regarded as a state office, as contended by the attorneys for Judge Womack, or as a local office, as contended by the attorneys for the defendant in this suit. That conclusion of the judge is correct, for, otherwise there would be, as the judge says, a hiatus in the law, in that there would be no provision for declaring the nomination for certifying the names of two or more candidates for two or more offices of the same character, such as two judgeships, as in this case.

The trial judge said that, grammatically speaking, it was impossible for two

candidates for offices of the same kind or character, such as two district judgeships, to receive "the greatest number of votes". We do not consider it ungrammatical to speak of two or more persons having the greatest number of votes. Strictly speaking of course only one candidate can have the greatest number of votes, except in the case of a tie vote. But there is no doubt about the meaning when a person speaks of two or more candidates having 'the greatest number of votes. In the second paragraph of section 80. of this very statute the expression "the two highest candidates" is used. And in the third paragraph reference is made to the remaining candidate who received the highest vote; and in the next paragraph appears the expression, "should one of the two persons receiving the highest number of votes", et cetera. And in the case of State ex rel. Dobbins v. McDermott, which we have referred to, the expressions "two highest candidates", and "three highest", and even "four highest", are used repeatedly in both of the opinions that were rendered.

The trial judge contends that inasmuch as there can be only one greatest number of votes in such a case, that phrase in the statute is applicable only to a case where there are more than two candidates for each of two or more separate and distinct offices, such as the office of judge and the office of district attorney. It seems unreasonable, though, to believe that the Legislature deemed it necessary to use the phrase, "person, or persons * * * having received the greatest number of votes", and the phrase "the name, or names, of such person, or persons", for the purpose merely of instructing the committee with reference to two or more separate and distinct offices, such as the office of judge and the office of district attorney. Any committee would know that it should declare the nomination and certify the name not only of .the person having received the greatest number of votes for one of two or more separate offices, but also the name of the person having received the greatest number of votes for the other office or offices. No committee would ever need any such instructions with regard to two or more separate and distinct offices. The conclusion, therefore, is inescapable, that the phrase, the name or names of the person or persons having received the greatest number of votes, was intended to apply particularly to a case like this, where there are more than two candidates having a majority of the votes cast and where the committee cannot certify the names of more than two nominees. The trial judge in this case was right in saying that this provision in section 76 must be read in connection with section 80, which, when correctly construed, declares that there shall not be a second primary except where no candidate has received a majority of the votes cast for the office for which he was a candidate in the first primary. The two sections together require that for a candidate's name to be certified by the committee as a nominee he must have received a majority of the votes cast, and if there are two or more similar offices to be filled by nomination, and if more candidates have received a majority than there are offices to be filled, the committee must certify the necessary

number of the names of the persons receiving the greatest number of votes. Where there are two candidates for each one of several distinct offices, such as for the office of judge and for the office of district attorney, each candidate who receives the greatest number of votes cast for the office for which he is a candidate receives á majority, and in such a case there is no occasion for speaking of the person or persons receiving the greatest number of votes. If the Legislature had intended that this phrase in the primary law should be applicable only to a case where there are two candidates for each of several separate and distinct offices, such as the office of judge and the office of district attorney, the Legislature would have used the word "majority" instead of the word "greatest number", and certainly the Legislature would not have used the phrase "name or names", or the phrase "person or persons".

The trial judge in this case cites the case of Bauer v. Gilmore, 165 So. 739, decided by the Court of Appeal on February 19, 1936. In that case there were three candidates in the primary for the nomination of two representatives from the same parish, and, as each voter was obliged to vote for two candidates, twice as many votes were cast for all of the candidates as there were voters, and the result was that each one of the candidates received a majority of the votes cast. In response to an inquiry from the Chairman of the Parish Democratic Executive Committee, the First Assistant Attorney General advised that the committee should declare the nomination of the candidate who received the highest number of votes cast, namely, C. R. Brownell, and should order a second primary to be held between the two other candidates, namely, R. Norman Bauer, and Walter T. Gilmore, for the remaining office of representative. Brownell had received 3,608 votes, Bauer 2,738, and Gilmore 2,561 votes. Bauer brought suit against Gilmore and the committee, praying that he, Bauer, should be adjudged the nominee for the office of representative, and that the resolution of the committee ordering a second primary between him and Gilmore should be declared null. The defendants filed exceptions to the jurisdiction of the court, and with reservation of these exceptions the committee filed an exception of misjoinder of parties defendant, and with reservation of both exceptions, the defendants filed exceptions of no cause or right of action. The district judge overruled the exception to the jurisdiction of the court and the exception of no right of action, maintained the exception of misjoinder of parties defendant, and referred the exception of no cause of action to the merits, and after hearing the case on its merits gave judgment for the defendant dismissing Bauer's suit. Bauer appealed to the Court of Appeal and that court affirmed the judgment so far as it maintained the exception of no cause of action and dismissed the plaintiff's suit. But the Court of Appeal based its decision exclusively upon the ruling that Bauer should have prayed for the court to order the committee to declare him the nominee and to certify his name to the Secretary of State, instead of praying merely, as he did pray, that the court should declare him the nominee and

that the action of the committee in calling a second primary should be declared null and of no effect. That decision therefore has no relation to the true meaning either of section 76 or of section 80 of the act of 1940, or to the corresponding sections in the Act 97 of 1922, which, as amended by Act 28 of the 2nd Extra Session of 1935, was the primary law in force at the time when Bauer v. Gilmore was decided. The trial judge in the present case says that, although the decision in Bauer v. Gilmore is not in point, it should have some persuasive effect, because, subsequently, Bauer was elected to the office of Speaker of the House of Representatives and served as such in the session of 1940, in which session the present primary election law was enacted. The trial judge said that he considered it highly significant that the Legislature, with Bauer presiding as Speaker of the House, in the session of 1940, did not change the law, so as to give it a meaning different from that which the Assistant Attorney General had given to it in the opinion which he had rendered to the Parish Executive Committee in the case of Bauer v. Gilmore. The opinion rendered by the Assistant Attorney General in that case, which opinion is published in the Reports and Opinions of the Attorney General for 1934-1936, page 397, consists only of a quotation of section 27 of Act 97 of 1922, as amended by Act 28 of the 2nd Extra Session of 1935, and the expression of opinion that the statute did not amply cover the situation, but that the spirit and intent of the law was to allow the voters the greatest freedom in the expression of their will, and hence that the committee should declare Mr. Brownell

the nominee for one office and call a second primary in which Bauer and Gilmore should be the candidates for the other office. The fact that Bauer, as Speaker of the House of Representatives, in the session of the Legislature in 1940, did not make any attempt, as far as the record shows, to change the primary law so as to make its meaning different from that which the Assistant Attorney General had attributed to it, does not necessarily imply that Bauer acquiesced in the interpretation that the Assistant Attorney General had given to the statute, much less does it amount to a legislative interpretation. Another Attorney General, under a previous administration, on September 18, 1930, had given an opinion directly opposite to that given by the Assistant Attorney General in the case of Bauer v. Gilmore. See Reports and Opinions of the Attorney General from 1930-1932, page 165. We observe also that Attorney General Porterie himself, on May 2, 1934, rendered an opinion declaring, in a case where there were five candidates for nomination for three members of the board of aldermen of a municipality, that, if more than three candidates received a majority, "the three highest with majority votes should be nominated". See Reports and Opinions of Attorney General, 1934-1936, p. 484. And, in the present case, the Attorney General advised the committee that the decision in the case of McBurney v. McGregor was the correct interpretation of the law; and the committee acted upon that advice.

In this case Judge Jones not only received a majority of the votes cast, as required by section 80 of the act of 1940, but

he was one of the two persons who received the greatest number of votes, as required by section 76, to entitle him to one of the two nominations. Judge Womack, who also received a majority of the votes cast, was not one of the two persons receiving the greatest number of votes; and, as there were only two offices to be filled, the committee could not certify the names of more than the two candidates who received the highest number of votes. Judge Holcombe and Judge Jones together received a clear majority over Judge Womack and Judge Fitch. There is no provision in the statute to justify declaring Judge Holcombe the nominee for one of the judgeships, with a plurality of only 170 votes over Judge Jones, without declaring Judge Jones the nominee for the other judgeship, with a plurality of 325 votes over Judge Womack. There is no reason why Judge Jones should be obliged to compete with Judge Womack again, in a second primary, without allowing Judge Jones an opportunity to compete also with Judge Holcombe, except, of course, that the statute requires that there shall be twice as many candidates as there are offices to be filled in a second primary where there are two or more offices of the same character to be filled. The provisions of sections 76 and 80 of the act of 1940, taken together, prohibit the holding of a second primary in a case where the result of the first primary is as it is in this case.

The judgment appealed from is annulled and the demand of the plaintiff is rejected and his suit is dismissed at his cost.

HIGGINS, Justice (concurring in part and dissenting in part).

This is a summary action under the provisions of the primary election law of this State, Act 46 of 1940, in which Judge James D. Womack claims that he is entitled to the right of entering a second primary with Judge W. Carruth Jones for the Democratic nomination for one of the offices of the two district judgeships of the Nineteenth Judicial District, and that the Democratic Executive Committee for the Parish of East Baton Rouge has illegally deprived him of that right by unlawfully declaring Judge Jones one of the nominees in the primary election held on September 8, 1942, and refusing to call a second primary. Judges Charles A. Holcombe, W. Carruth Jones, Leslie A. Fitch, the other candidates in the primary, the Democratic Executive Committee of the Parish of East Baton Rouge, its Chairman, J. Russel Doiron, and the Secretary of State are made parties defendant. Judge Womack prayed that the Court annul the resolution of the Committee, declaring Judge Jones one of the nominees; that an injunction be issued to restrain the Secretary of State from printing on the official ballot in the general election to be held on November 3, 1942, the name of W. Carruth Jones as one of the nominees for one of the judgeships of the Nineteenth Judicial District; that writs of mandamus be issued to the Secretary of State, directing him to make the official tabulation of the returns of the election of September 8, 1942, and to furnish same to the Committee, and to the Chairman of the Committee, directing him upon receipt of the official tabulation from the Secretary of State to convene the

Committee for the purpose of declaring the nomination of Judge Holcombe to one of the judgeships of the Nineteenth Judicial District and certifying his name as such, and to the Democratic Executive Committee of the Parish of East Baton Rouge, directing it to order a second primary election, to be held at the time and in the manner provided by law, for the nomination of the other candidate of the Democratic party for the other judgeship of the said district, and to declare that Judges Womack and Jones only shall be voted on in the said primary election, as required by Sections 76 and 80 of Act 46 of 1940.

All the respondents, except Judge Fitch, filed exceptions to the jurisdiction of the court ratione materiae and of no right and no cause of action, upon the grounds that the Committee acted in accordance with the provisions of the primary election statute, and in the alternative, if it be held that the statute did not cover the case and was silent, that the Committee was within its right to declare the candidates receiving the two highest majorities to be the Democratic nominees. With reservation of their rights under these exceptions the defendants, in their answers, made the same defense on the merits.

The Committee and its Chairman also filed an "exception of misjoinder of parties and actions, in that the Parish Committee and the Secretary of State are interpleaded together, whereas the relief prayed for is inconsistent and contrary."

In his answer, Judge Fitch pleaded that under the provisions of Section 80 of Act 46 of 1940, all four candidates should be adjudged entitled to enter a second primary election.

Judge Holcombe filed a plea of estoppel against Judge Fitch, based upon the ground that Judge Fitch acting as a member of the Committee by proxy had voted to declare Judge Holcombe one of the nominees. He further filed a plea of prescription against him under the provisions of Section 86 of Act 46 of 1940.

The trial judge, Honorable Rene A. Viosca, one of the judges of the Civil District Court for the Parish of Orleans, appointed by this Court under Act 124 of 1940 because Judges Holcombe and Womack had voluntarily recused themselves as being parties interested in the suit, was of the opinion that the Court had jurisdiction to determine the alleged rights of the respective parties under the primary law, the jurisdiction being conferred upon the court by the primary election law itself. (See Section 101, Act 46 of 1940; Bauer v. Gilmore et al., La.App. Appeal, First Circuit, 165 So. 739; Le Blanc v. Hoffmann, 175 La. 517, 143 So. 393–395; Porter v. Conway, 181 La. 487, 159 So. 725; and State ex rel. Dobbins v. McDermott, 155 La. 211, 99 So. 41. He also held that the petition sets forth a right and cause of action against all of the defendants except Judge Holcombe; that Judge Holcombe's plea of estoppel against Judge Fitch was not well-founded because he had officially acted as a member of the Committee in accordance with the opinion of the Attorney General, as the legal advisor of the Committee, but that the plea

of prescription filed by Judge Holcombe against Judge Fitch was well-founded as he had filed his pleadings too late; that the exception of misjoinder of parties and causes of action filed by the Committee and its Chairman were not well-founded because the main question before the court was whether or not the Committee had violated the provisions of the primary law in declaring Judge Jones as one of the nominees and refusing to order a second primary with Judges Womack and Jones as the candidates; and as all parties and their respective asserted claims were before the court, a multiplicity of suits was thereby avoided. The judge a quo re-referred the jurisdictional exception and the exceptions of no right and no cause of action to the merits of the case, because they were so interwoven with it as to amount to the same defense. On the merits, he concluded that the first and second paragraphs of Section 76 of Act 46 of 1940 had to be construed together and, therefore, it was unnecessary to decide whether or not the office of judge of the Nineteenth Judicial District Court for the Parish of East Baton Rouge was a State, District, or Parish office within the meaning of the primary election law; that Sections 76 and 80 of the statute had to be construed together and, therefore, a candidate in a primary election had to obtain a majority vote to be declared a nominee, a plurality being insufficient; that under the provisions of Sections 76 and 80 Judge Holcombe having received a majority and the greatest number of votes of all of the candidates was entitled to be declared the nominee, as was conceded by all parties to the suit, except Judge Fitch; that as Judge Jones had not received the greatest number of votes but only a greater majority than Judge Womack, he was not entitled to be declared one of the nominees, and as Judges Jones and Womack were the candidates who received the two highest numbers of votes (other than the nominee Holcombe), they were entitled to enter a second primary under the provisions of Section 80 of the statute; and that the Committee had the authority and right, under Section 80, to call a second primary, because the Democratic electors had only chosen one nominee (Holcombe) and were entitled to elect a second nominee to represent the Democratic party in the general election.

The respondents appealed, and the judgment of the trial court on the merits was annulled by a divided Court here.

Insofar as the exceptions to the jurisdiction of the court ratione materiae are concerned, as this Court in the majority opinion passed upon the merits of the case, for all practical purposes it was equivalent to an affirmation of the ruling below that the court had jurisdiction.

The majority opinion agrees with the holding of the trial judge that the first and second paragraphs of Section 76 of Act 46 of 1940 are to be construed together and that the provisions of Sections 76 and 80 thereof are likewise to be construed together. There is nothing in the majority opinion which would indicate that the trial judge improperly overruled any of the pleas and the exceptions except those of no right and no cause of action, which

raise the same questions presented on the merits, or that he was in error in maintaining the plea of prescription against Judge Fitch.

The fundamental difference between the opinion of our learned brother below and the majority opinion of this Court is the proper construction to be placed upon the provisions of Sections 76 and 80 of Act 46 of 1940 with reference to the right of the Committee to declare Judge Jones a nominee, and the lack of authority on the part of the Committee, under Section 80 of the statute, to call a second primary. The majority opinion holds that the Committee had the power and authority under Section 76 of the statute to declare Judge Jones as one of the nominees and that it did not have authority under Section 80 thereof to call a second primary.

My views are in accord with those expressed by the trial judge in his rulings upon the pleas and exceptions as well as on the merits and I, therefore, concur in the majority opinion in the respects where it is stated that the trial judge correctly ruled and dissent from it on the merits.

Under the provisions of Article 7, Section 31, of the Constitution of 1921 and Act 27 of 1936, the Nineteenth Judicial District is composed only of the Parish of East Baton Rouge, from which district two judges are to be elected. These offices are not divided or separated and candidates seeking the Democratic nomination for them run as candidates for both offices. Under the provisions of Section 72 of Act 46 of 1940, in order for a voter to cast a legal vote, it is required that he vote for two candidates and, therefore, if he votes for only one candidate, the ballot is spoiled. The Democratic Executive Committee of the Parish of East Baton Rouge was duly convened and called the primary election, which was held on September 8, 1942. Judges Holcombe, Womack (encumbents), Jones, and Fitch duly qualified as candidates and ran in the election. There were 14,345 ballots cast, or a total of 28,690 votes for all of the candidates. As there were two nominations to be made each voter was required to vote for two candidates. In order for a candidate to have a majority he had to receive in excess of 7,172 votes. The Committee's tabulation of the votes taken from the tally sheets of the election commissioners shows the following results: Judge Holcombe, 8,025 (or a majority and the greatest number of the votes received by any of the candidates); Judge Jones, 7,855 (or a majority but not the greatest number of votes obtained by any candidate); Judge Womack, 7,530 (or a majority but not the greatest number of votes received by any of the candidates); and Judge Fitch, 5,280 (or less than a majority and the least number of votes received by any of the candidates).

According to the stipulation dictated into the record, there was no material variation in the number of votes received by the four candidates as reflected on the election commissioners' tally sheets sent to the Secretary of State and those mailed to the Committee. The Committee met and used the tally sheets forwarded to its Chairman by the commissioners of the election and

passed a resolution declaring that Judge Holcombe, who had received the greatest number of votes and a majority, and Judge Jones, who had received a majority but not the greatest number of votes cast for any candidate in the election, were the Democratic nominees for the offices of the two judgeships for the Nineteenth Judicial District for the Parish of East Baton Rouge, in accordance with an opinion rendered by the Attorney General interpreting the provisions of Sections 76 and 80 of Act 46 of 1940.

Before the resolution was adopted by the Committee, Judge Womack protested the proposed ruling as illegal on the grounds (1st) that the Committee was without jurisdiction to take any action except upon the official tabulation furnished by the Secretary of State, as provided in Section 76 of Act 46 of 1940, and (2nd) that the Committee had authority to declare only Judge Holcombe, the candidate who received the greatest number of votes in the election, as a nominee, and was powerless to declare Judge Jones as a nominee, as he had not received the greatest number of votes. He requested that the Committee call a second primary election and declare Judge Jones and himself to be the only two candidates entitled to run in that election for the purpose of determining who shall be the other Democratic nominee for one of the judgeships for the Nineteenth Judicial District. After the Committee declined to comply with his requests, he instituted the present suit.

The questions to be decided depend upon the proper construction to be placed upon the provisions of Sections 76 and 80 of Act 46 of 1940, which read as follows:

"Section 76. Immediately upon receipt, the Secretary of State shall proceed to tabulate and compile the returns in all elections for United States Senators, Congressmen and State Officers voted for throughout the entire State and respective Congressional Districts, and Supreme Court Districts, or for any other State Board or Commission, or for any State Officer whose election may be provided by law, and shall promulgate the same in the official journal of the State within eight days after the date of said primary election. He shall forward at the same time, by special delivery, a certified copy thereof, under his signature and seal of office, to the chairman or secretaries of the respective Committees ordering the primary elections, which shall be the official tabulation of the returns of said election, except when contested as provided for in this Act. *Immediately upon receipt of said certification from the Secretary of State it shall be the duty of the Chairman or Secretary of each of the Committees to whom said returns have been forwarded to convene his Committee for the purpose of declaring the nomination of the person, or persons, shown by the certification of the Secretary of State as having received the greatest number of votes. They shall certify the name, or names, of such person, or persons, to the Secretary of State.*

"In all other primary elections, the returns shall be tabulated and compiled by the respective committees ordering the primary election and the result thereof cer-

tified to the Secretary of State. It shall be the duty of the Chairman of said Committee, immediately upon receiving the said returns, to at once open the same and cause same to be tabulated and compiled, and at twelve o'clock, noon, on the fourth day after the primary, the said committee ordering same shall convene at the same place and the chairman thereof shall submit to it the tabulated statement showing the result of the said primary election, together with the original returns received by him. The Secretary of State and the Chairman of all the respective committees under the provisions of this Act are required to safely keep and preserve all tally sheets and poll lists and returns received by them as well as all compilations made by them of returns for a period of six months and all of said documents shall be public records and open to inspection by anyone desiring to examine same." [Italics ours.]

. "Section 80. After the Committee has met and proclaimed the results as herein provided, and it shall be *found that any candidate has failed to receive a majority of the votes cast for the office for which he was a candidate,* except in cases wherein under the provisions of this Act a plurality of votes shall nominate, a second primary shall be held with the same election officers and at the same places as the second primary for State Officers and United States Senators or Representatives in Congress; if there be no second primary for State Officers or United States Senator or Representative in Congress or the first primary be held at a time when neither State officers nor United States Senator or Representative in Congress shall be voted for, then the second primary shall be held five weeks from the date of the first primary, provided that if this day should fall on Mardi Gras, then the said second primary shall be held six weeks from the date of the first primary.

*"In the second primary only the two highest candidates in the first primary shall be voted on.*

*"Where in the second primary it is necessary to fill by nomination two or more offices of the same character there shall be a sufficient number of candidates entitled to take part in said primary so as to provide twice as many candidates as there are positions to be filled, and no more.* In event one of the candidates entitled to be voted for in the second primary should die or withdraw, *then the remaining candidate for that office who received the highest vote in the first primary* shall be declared *the nominee* and only the names thereafter remaining shall be voted on. In the event that two or more candidates receive a *tie vote in the second primary,* the nominee shall be determined by a public drawing of lots, which drawing shall be conducted by the committee calling the primary after giving three (3) days notice to the candidates affected to attend.

"In case of failure to elect because no candidate received a majority of votes cast for the office for which he is a candidate, *should one of the two persons receiving the highest number of votes decline to continue his candidacy,* or should he die or be otherwise disqualified, *the other candidate who shall have received the highest num-*

*ber of votes for the office for which he was a candidate shall be declared the nominee of the party."* (Italics ours.)

The above quoted Section 76, in as concise language as possible, makes it the mandatory duty of the Committee in charge of the particular primary election in question to declare the nomination of the person or persons shown by the certification as having received "the greatest number of votes." These words mean one and only one of the candidates and not more than one of them and, therefore, as applied to this case, could only include Judge Holcombe, who received the greatest number of votes, and exclude W. Carruth Jones, who did not receive the greatest number of votes.

A mere reading of the provisions of Section 76 of the statute reveals that the sole and only reason why any one could contend that it is possible to construe the language which authorizes the committee to declare "the nomination of the person, or persons, shown by the certification of the Secretary of State as having received the greatest number of votes" as granting to the committee the authority to certify as nominees not only the highest but also the second highest majority candidate for dual offices, when more candidates have received majorities than there are offices to be filled, is because of the words "persons" and "names" therein. Therefore, from the outset, it is important to determine to whom the Legislature was referring when it used the plural of the words "person" and "name". Clearly, the Legislature was referring to the candidate or candidates who received the greatest number of votes in the particular primary elections that were being conducted under the respective committees. Obviously, in the case of candidates for nominations for different single or separate offices receiving majorities of the votes cast, all of them necessarily receive the greatest number of votes. On the other hand, in the case of the candidates for nomination for dual offices where there is no division in the offices and each candidate is running for both of them, the candidate who receives a majority vote does not necessarily receive the greatest number of votes, because, as in the instant case, there may be other candidates who also receive majorities. But it is a mathematical certainty that there can be one and only one candidate in that group who receives the highest or greatest number of votes, the sole exception being, of course, if there is a tie. It will be observed that outside of the fact that the plural of the words "person" and "name" is used, there is nothing otherwise in Sections 76 and 80 to indicate in the slightest that the Legislature intended that the Committee would have the right and authority to designate according to the respective pluralities the candidates received, the second majority candidate as one of the nominees to the dual offices to be filled. The Legislature in Section 80 with some particular effort clearly shows its intention that "the two highest candidates in the first primary" election (other than the nominee) would be entitled to enter a second primary. Now, if the Legislature intended to give the Committee the right to not only designate as the nominee the first but also the second high-

est majority candidate for the dual offices, where more candidates received majorities than there were offices to be filled, it would likewise have similarly worded Section 76. But the Legislature did not do so. It must be remembered that in the instant case we are dealing with dual offices that are not independent or separate of each other and that the four candidates ran for both of those offices and three of them received majorities, which ordinarily under the provisions of our Primary Law would entitle each of them to be certified as the nominees, but due to the fact that there are only two offices to be filled, the Committee could not certify all three of them. Judge Holcombe was running for both of the offices and necessarily received the greatest number of votes for the two of them. Judge Jones necessarily ran second for both offices, and not second for one and first for the other, because if we construe the provision in the latter way, we would be making the two offices separate and distinct, whereas under the law, it is conceded that they are not divided and not independent of each other. Therefore, it is plain that the Legislature, in using the plural of the words "name" and "person", was referring to other candidates who ran for other offices in the same primary under the jurisdiction of the same Committee and who had obtained majorities and the greatest numbers of votes.

The trial judge very correctly explained the meaning of the words "persons" and "names" which appear in the first paragraph of Section 76 of the statute, as follows:

" * * * On the other hand, we have to give some meaning to the words 'person or persons' and the expression 'name or names of such person or persons,' but if we read that in connection with the entire paragraph—the first paragraph of Section 76—it seems to me that the meaning is fairly clear, because in connection with this certification of the nomination of 'the person, or persons', and the certification of 'the name, or names,' reference is made to certain returns received by the committee, or committees, and those returns relate to all those various offices mentioned in the first sentence of Section 76, namely, United States Senators, Congressmen, and State officers voted for throughout the entire State and respective Congressional Districts, and Supreme Court Districts, or State boards and commissions and other state officers.

"In other words, taking the paragraph as a whole, it would appear that what the Legislature said was that the Secretary of State shall send these various compilations to the chairman of the respective committees, and, of course, they receive · them; and if it is merely to fill one office only, in that event the committee certifies only one person. Therefore, it would be 'a person.' On the other hand, some committees would receive returns on numerous offices, and therefore they would have to certify not one name, but many names of persons who have received the greatest number of votes for those different kinds of offices."

Since it has been demonstrated that "names" and "persons" as used in Section 76 of the statute do not refer to candidates

for dual offices who have received majorities but not the greatest number of votes, i. e., the second man, the word "greatest" is left without any word or words to broaden its restricted meaning and, therefore, applies only to the candidate who receives the greatest vote.

It is stated on pages 15 and 16 of the prevailing opinion that if the Legislature did not intend to authorize the Committee to certify as a nominee the majority candidate who ran second, it would not have used the word greatest but would have used the word majority. The answer to this statement is that the primary statute, Section 79, provides: "If for any reason, there is no second primary to nominate a candidate for Governor, there shall be no second primary election for State Officers who ran in the first primary, but the person receiving a plurality of the votes cast for the office for which he was a candidate shall be declared to be the nominee of the party holding said primary." If the Legislature in Section 76 had used the words "majority of votes" instead of "the greatest number of votes", the Committee in charge of the election would have been powerless to certify as nominees the candidates who under the plain provisions of Section 79 of the statute were entitled to be certified by virtue of having received pluralities.

Likewise, "candidates for membership on the State Central Committee from any parish of the State, or ward of the Parish of Orleans" are also entitled to be declared duly elected as members of the Committee by pluralities under the express provisions of Paragraph 2 of Section 11 of· the statute. It will be observed that in both Sec-

tions 11 and 79, the Legislature left no doubt that the candidates for the offices specifically named therein are entitled to election by pluralities, and in each of those Sections the Legislature expressly dispensed with the holding of a second primary election. This conclusively shows that whenever the Legislature intended to withhold from the respective executive committees the right to call a second primary, it expressly dispensed with the holding of a second primary in the clearest terms. Section 80 of the statute authorizes the Committee to hold a second primary and there is no provision in Section 76 of the statute dispensing with the holding of the second primary. Therefore, the Committee has the authority to call a second primary and it was its duty to do so.

The word "greatest" is the superlative of the adjective "great". "Great" is defined as " * * * large in number * * * " and, therefore, the greatest is the largest number, or, in this case, the largest number of votes received by any of the candidates. Webster's New International Dictionary, Second Edition, defines "superlative" as " * * * expressing the highest or utmost degree or amount, * * * peak or acme * * *."

All of the members of this Court and the judge of the district court are unanimous in the opinion that Sections 76 and 80 of Act 46 of 1940 must be construed together.

Under the language of Section 80 of the above statute, a candidate, to be entitled to the nomination, must receive a majority of the votes, a plurality being insufficient. Un-

der Section 76 of the same Act, the candidate receiving "the greatest number of votes" is entitled to be declared the nominee. Therefore, the candidate entitled to nomination when more candidates receive majorities than there are nominations for offices to be made must have received the greatest number of votes. Applying the language of the two above quoted sections specifically to this case, first, with reference to a majority and, second, in connection with the greatest number of votes, it appears conclusively from the record that Judge Fitch did not receive a majority of the votes; that Judge Womack received a great majority of the votes; that Judge Jones received a greater majority of the votes than Judge Womack; and that Judge Holcombe received the greatest majority of the votes cast for the three majority candidates. Likewise, Judge Fitch received the least number of votes, Judge Womack received a great number of the votes, Judge Jones received a greater number of the votes than Judge Womack, and Judge Holcombe received the greatest number of votes of all of the candidates. From a mathematical viewpoint, insofar as the majority and the highest or greatest number of the votes are concerned with reference to the respective candidates, Judge Holcombe was first, Judge Jones was second, Judge Womack was third, and Judge Fitch was fourth. Therefore, these candidates, in the above order, received the greatest number, the greater number, a great number and the least number of votes cast. Under the express provisions of Section 76 of the statute, the Committee was authorized only to certify as nominee under these circumstances the first or top man and not the second one.

The Court may not, by construction or interpretation, use the comparative and give effect to the comparative or greater majority or greater number—when the law is plain and unambiguous that the person or candidate who receives the "greatest number of votes" shall be declared the nominee. The mere fact that in Section 76 of the statute, the plural of the words person and name is used does not contradict the clear statement of the Legislature that the candidate who receives the greatest number of votes shall be declared the nominee, because the plural as used there simply refers to any other candidates who received a majority and the greatest number of votes for other offices than the ones in question, that is, the judgeships, when those candidates were running in the same primary election under the jurisdiction of the same Committee.

To illustrate, there were three other candidates who were running for the nomination for the office of district attorney of the Nineteenth Judicial District for the Parish of East Baton Rouge in that same primary election, under the call and jurisdiction of that same Democratic Committee. If any of those candidates had received a majority and the greatest number of votes and the others had failed to receive a majority, the name of Judge Holcombe, who received a majority and the greatest number of votes for the nomination for one of the judgeships of that district, and the name of the candidate who received a majority and the greatest number of votes for the nomination for the

office of district attorney of that district, would be the names of the persons certified to the Secretary of State as the Democratic nominees for those respective offices. It so happened that none of the three candidates for nomination for district attorney received a majority vote and therefore the Democratic party was without a nominee, and this same Committee properly, under Section 80, called a second primary election with only "the two highest candidates in the first primary" as the ones entitled to run therein.

Under the statutory law of this State, the term for the Parish School Board members is six years and approximately one-third of its membership is elected every two years at the Congressional elections. The Parish Executive Democratic Committee has jurisdiction and also acts in certifying the names of the Democratic nominees for those offices. The Parish Committee, which called the primary election of September 8, 1942, for the Democratic nominations for the judgeships and for the office of district attorney for East Baton Rouge Parish, also ordered a primary election for the purpose of designating Democratic nominees for the offices of members of the Parish School Board. So, the Committee, in certifying the nominees to the Secretary of State, certified the names of the persons who received the greatest number of votes and majorities in the primary election.

The presence of the plural of the nouns "person" and "name" in the controversial language may also be explained as conveying the legislative intent to cover an instance where, in the first primary, two of the candidates for dual nomination received a majority and an equal number of votes. If two persons received the same number of votes and a majority—being more than one—the plural form would necessarily have to be used, to authorize the Committee to certify the "names" of those "persons" as the Democratic nominees, as having received the greatest number of votes.

To show that the Legislature was conscious of and did not fail to observe the difference between the meanings conveyed by the language "the greatest number of votes" as used in Section 76 and the language "the two highest candidates" as used in Section 80, it will be noted that in the second paragraph thereof, dealing with candidates entering the second primary, it used the word "two" before "highest" to show its clear intention to broaden the usual restrictive meaning of the word used in the superlative—"highest". On the other hand, in Section 76, the Legislature clearly showed that it intended the usual restrictive meaning when it used the superlative of the word "great" because if the Legislature meant to broaden the word "greatest" to include the candidates who received the second greatest number of votes where there were more candidates for dual offices receiving majorities than there were offices to be filled, it would have so expressed itself in that section or in the statute. This shows that the Legislature used these words deliberately and intentionally and sought to convey different meanings by employing them. It was, therefore, no oversight or inadvertence when the Legislature authorized the Committee to declare the candidate who received the great-

est number of votes in the first primary to be the nominee, and the "two highest candidates," other than the nominee, to be entitled to enter the second primary.

The respondents cite the opinion of the Court of Appeal of the First Circuit in the unreported case of McBurney v. McGregor (1920) as being in point and decisive of their position in this case. In McBurney v. McGregor, three of the four candidates for the Democratic nominations for Member of the House of Representatives of the General Assembly of the State of Louisiana from the Parish of East Baton Rouge received majorities. Two candidates had to be nominated for the two offices. The Committee declared the two candidates who had received the first and second highest vote and majorities as the nominees. The Court of Appeal affirmed the judgment of the district court which approved the Committee's action, on the ground that it had done nothing inconsistent with the letter or spirit of the primary election law—Act 35 of 1916. The Act did not contain the provision in question in Section 76 of Act 46 of 1940. That language made its appearance for the first time in Section 4 of Act 8 of the Second Extra Session of 1934, amending Section 27 of Act 97 of 1922. The same provision was re-enacted by Act 28 of the Second Extra Session of 1935 and again re-enacted into Section 76 of the present primary election law—Act 46 of 1940. It is elementary that the Legislature is presumed to have taken cognizance of the interpretation by the court of its statute. If the members of the Legislature were satisfied with the construction placed by the Court of Appeal upon the law and wanted the statute to remain as it was, then, the Legislature would simply have left the law stand and would not have amended it as it did subsequently by providing that the candidate who received the "greatest number of votes" and a majority was to be declared the nominee by the committee. If the Legislature had intended to confirm and write into the statute the construction placed upon Act 35 of 1916 by the Court of Appeal, it is clear that the Legislature certainly would have used different phraseology to convey that meaning. This the Legislature did not do, because for the Legislature to have confirmed or ratified the construction placed upon Act 35 of 1916 by the Court of Appeal, it would have had to use substantially the following language: In cases where there are two or more offices of the same character to be filled, which are not separate or divided, and each of the candidates is running for the nomination for all of the offices, in the event more candidates receive majorities in the first primary than there are offices to be filled, the committee shall declare, as the nominees, the candidates who ran first, second, third, fourth, fifth, etc., in their order, as there are offices to be filled. Certainly, because the Legislature used the plural of person and name in writing Section 76 of the statute, there is no justification for saying that the Legislature intended to convey a meaning equivalent in result to the above suggested language. On the contrary, the members of the Legislature, in the clearest and most explicit language, on three distinct occasions, in three separate Acts, have limited the Committee's authority and power to declare as a

nominee the candidate who has received a majority and the greatest number of votes in that election for that particular office or offices to be filled. Neither the Committee in charge of the election nor the Court itself has the power to change the Primary Election Law, which exclusively governs the holding of Primary Elections, the rights of all persons therein being purely statutory. For this Court to say, by means of interpretation or construction, that the second highest candidate is also entitled to be declared the nominee and that the Committee has authority to so declare him and refuse to call a second primary is for all legal purposes and effects adding to the statute the above suggested language. This Court has consistently declined to invade the legislative province. Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11, State et al. v. Maestri et al., 199 La. 49, 5 So.2d 499, and authorities therein cited. Le Blanc v. Hoffmann et al., 175 La. 517, 518, 143 So. 393.

This case is not without precedent under the provisions of the present statute corresponding with those of Act 8 of the Second Extra Session of 1934, amending Section 27 of Act 97 of 1922, and Act 28 of the Second Extra Session of 1935. In 1936, Messrs. Bauer, Gilmore and Brownell were candidates for the nominations for members of the House of Representatives from the Parish of St. Mary, with two to be elected, there being no segregation in the offices and each candidate was, therefore, running for both offices and the electors were required to vote for two of them. They all received a majority vote but Brownell was the only one who received the greatest number of votes. The Parish Democratic Executive Committee requested of the Attorney General an opinion or ruling on the provisions of the primary election law, which were identical with the present provisions of Section 76 of Act 46 of 1940, (1st Par.). The Attorney General rendered an opinion in which he held that it was the duty of the Committee to declare Brownell one of the nominees because he had received the greatest number of votes and to call a second primary in which Messrs. Bauer and Gilmore would be the candidates for the other nomination for the office to be filled, and the Committee acted accordingly. Bauer refused to enter the second primary and instituted court proceedings but the suit was dismissed on exceptions of no right and no cause of action because of the defective prayer of the petition. Bauer v. Gilmore et al., La.App., 165 So. 739. Subsequently, in 1940, Bauer was elected a member of the Legislature from the Parish of St. Mary and received from his colleagues the honor of being selected the Speaker of the House of Representatives. That Legislature passed Act 46 of 1940 and placed in the statute Section 76, the pertinent part of which contains the identical language used in the previous statutes since 1934. If either Bauer or any member of the Legislature had been dissatisfied with the correctness of the Attorney General's ruling that only the candidate who received a majority and the greatest number of votes was to be declared the nominee by the party committee, the Legislature could easily have amended the statute. It did not do so and the same pertinent language was retained in the Act

which was adopted by overwhelming majorities in both houses. Therefore, from the viewpoint of the language employed in the statute itself, as well as its historical background, the candidate who "received the greatest number of votes" and a majority was entitled to be declared the nominee, and "only the two highest candidates in the first primary" (other than the nominee Holcombe) were entitled to run as candidates in the second primary.

It is stated on page 3 of the majority opinion [10 So.2d 216] that under the provisions of Section 80 of Act 46 of 1940, that the Committee is authorized to call a second primary only when every candidate in the first primary has failed to receive a majority of the votes cast for the office or offices for which he is a candidate and, therefore, as three of the candidates in the election in question received majorities, the Committee properly declined to order a second primary election with Judges Jones and Womack as the only candidates. It has already been shown that the proper construction to be placed upon Sections 76 and 80 is that the Committee is authorized to certify only the candidate who receives the greatest number of votes and a majority, and consequently, the result of the first primary election was that only one Democratic nominee was elected by the voters in accordance with the provisions of the primary law, Sections 76 and 80. This left the Democratic party without a second nominee for one of the judgeships. The purpose of a second primary election is to elect a nominee when the voters failed to do so in the first primary, according to the statute. The receipt of a majority of votes by a candidate is equivalent to nomination under the statute, except where more candidates receive majorities than there are nominations to be made for offices, in which case, only the candidate receiving the greatest number of votes and a majority is entitled to be declared the nominee, under Section 76 thereof. The sole purpose of conducting the first and second primaries under the provisions of the statute is to grant to the voters as members of the party, the right to choose their nominees for public office. Therefore, construing the provisions of Sections 76 and 80 together, there was only one nominee designated in the first primary and there remained another nomination to be made because there were two offices to be filled. Section 80 authorizes the Committee to call a second primary, in order that the voters shall have a right to select a second nominee. If this were not the true meaning of Section 80 authorizing the Committee to call a second primary, it would be impossible for the voters to designate the second nominee to be the candidate for the Democratic party in the general election in November for one of the judgeships. Surely, the Legislature did not contemplate any such result. The interpretation placed by the majority opinion upon the provisions of Section 80 with reference to the Committee's authority to call a second primary by limiting its power to a case where every candidate failed to receive a majority for the office or offices is unsound. If there were several offices to be filled and a primary election was called for the purpose of designating nominees to be the party's candidates in the

general election for those offices, and one of them received a majority, under the prevailing view of this Court the Committee would be powerless to call a second primary election to elect the other nominees. This interpretation deprives the Committee of its right to call a second primary and the voters of their right under the primary law to choose their nominees for public offices. This is contrary to the obvious purpose and plain spirit of the statute. This Court has been very care-ful not to declare a candidate a nominee upon any technical construction of the primary election law that foreclosed the right of the people to choose their own officials, either in first or second primaries.

Even a perfunctory reading of not only the present primary law but all of the previous primary statutes reveals that the whole basic thought and fundamental idea which permeates them is, first, that the voters affiliated with the party calling the primary election shall have the right through their ballots to choose their nominees who are to enter the general election for the respective public offices they seek and, second, that in order to select these nominees so that the party will be represented in the general election, provision is made for both a first and a second primary election. For emphasis, I reiterate that the sole and only purpose of either the first or the second primary election is to give the voters affiliated with the party calling the primary election the right to designate their nominees for public office to enter the general election. Therefore, a construction of the provisions of the primary law which deprives the Committee

of the right to call a second primary election also denies to the people the right to select their nominees. Under our primary system in this State the designation of the Democratic nominee for the public office he seeks is equivalent to election to the office. The general election is usually a mere formality. In fact, the primary election law requires all of the electors affiliated with the Democratic Party to pledge themselves to support the Democratic nominees in the general election. It is, therefore, very difficult to see how any construction can be placed upon the primary law and be said to express the legislative intent when the result of the interpretation is the antithesis of the main and cardinal purpose of the primary law; that is that the people will have the right to choose their nominees for public office. United States v. Classic, 313 U.S. 299, 1941, 61 S.Ct. 1031, 85 L.Ed. 1368. I am not un-mindful of the fact that Judges Womack and Jones submitted their respective candidacies to the electorate in the first primary and Jones received a greater vote than Womack, but it must be borne in mind that because the voters were required to vote for two candidates, more candidates received majorities—the equivalent to nom-ination usually—than there were offices to be filled.

Under the express provisions of Section 72 of the statute, where there are candidates for nominations for plural offices, the elector is required to vote for two or more of them as there are number of offices to be filled, under the penalty of having his ballot rejected as a spoiled one. In other words, in such primary elections,

even though the voter conscientiously concludes that only one of the several candidates is really qualified and entitled to his suffrage, he is prohibited from expressing his real conviction and choice by voting for that candidate only. He is compelled either not to participate in the primary election or to vote for another or other candidates, as the case may be, for whom he does not want to vote in order to vote for the candidate of his choice. The requirement of voting for as many candidates as there are offices to be filled also makes the voter who wants to vote for only one candidate by voting for others, indirectly vote against the candidate whom he considers best qualified. Thus, by manipulating combinations of candidates, the will of the majority of the people might well be defeated rather than expressed. It is patent that where there are three candidates for nomination for dual offices, the position of any one of them who cannot make a combination with one of the other two is hopeless, even though he be the best qualified candidate of the group. His supporters are required to vote for one of the two combined against him and each of the other two candidates' supporters vote solidly for them and against him. The members of the Legislature were or at least presumed to be cognizant of the constitutional authorization to pass primary laws guaranteeing fairness in party primary elections and have considered that in a situation like the present one there was sufficient expression of the majority of the voters in favor of the candidate who received the greatest number of votes to warrant declaring him a nominee, whereas the candidates who received majorities but not the highest or greatest numbers of votes were to run in a second primary.

Applying the specific provisions of Sections 76 and 80 to the facts of this case, it is clear that the Committee was authorized to declare only Judge Holcombe the nominee, because he was the only candidate who received a majority and the greatest number of votes for the nomination to the dual offices in the primary election. Judges Jones and Womack being "the two highest candidates in the first primary" are entitled to be the only candidates in the second primary, which the Committee is authorized to call for the purpose of having the people designate the other Democratic nominee to enter the general election in November as their candidate for the other judgeship. The provisions in paragraph 3 of Section 80 requiring twice as many candidates as there are positions to be filled and no more is satisfied and complied with by having Judges Jones and Womack, the two candidates, run in the second primary. Therefore, under the facts here, the primary election law clearly and amply covers every phase of the case. Consequently, it cannot be said that the statute is silent on the questions of law presented and, therefore, the Committee's action was not inconsistent with the provisions of the primary law. The mere fact that in the future an extraordinary situation may arise in another suit where the primary law is insufficient to cover the case or silent with reference thereto—is not a good reason why the Court should not apply the law

where it does clearly and adequately cover the issues as in the instant one.

The cases of State ex rel. Carbajal v. Looney, 154 La. 457, 97 So. 657, and State ex rel. Dobbins v. McDermoth, 155 La. 211, 99 So. 41, are not apposite here, because they are based upon the primary election statute—Act 97 of 1922, which did not contain the provisions in Section 76 of the present law. The latter authority is further differentiated on the ground that none of the candidates received a majority vote.

The majority opinion approvingly refers to the rulings of Attorney Generals Saint and Stanley. The letter of Judge Saint is dated September 18, 1930, and construes the provisions of Act 97 of 1922. In it, he states: "There were two judgeships to be filled in the primary referred to, and two of the four candidates received substantial majorities, and under the primary system, any candidate receiving a majority of the votes cast, is necessarily nominated." This ruling is in accord with the holding of this Court, under the present law, in the case of Edwards v. Daigle, et al., La.Sup., 10 So.2d 209, decided September 30, 1942. Therefore, Judge Saint's ruling, as well as the holding in the Edwards case, is not in point, because here more candidates received majorities than there were nominations for the dual offices to be filled with the result that by construing Sections 76 and 80 together, the candidate receiving the greatest number of votes and a majority is declared to be the nominee and the "two highest candidates in the first primary," other than the nominee, are entitled to enter a second primary election between them.

Mr. Stanley's letter, upon which the Committee in the instant case acted, is dated September 11, 1942, and is predicated entirely upon the holding of the Court of Appeal, First Circuit, in an opinion dated February 10, 1920, in the unreported case of McBurney v. McGregor, in which the court construed the provisions of Act 35 of 1916, and concluded that, as the Committee had not acted contrary to or inconsistent with the provisions of the primary law as it then existed, the court would not interfere. In other words, the complainant had failed to show that the Committee had deprived him of any right granted to him by the primary election law. In his letter the Attorney-General stated:

"I respectfully call your attention to the fact that the provisions of the *present Primary Law are identical* with the *Primary Law as it then existed* at the *time the Court of Appeal decided the McBurney suit.*

"Therefore, in my opinion, it is the duty of your Parish Committee to follow the law as laid down by the Court of Appeal, First Circuit, and to declare Judge Charles A. Holcombe and W. Carruth Jones, the Democratic nominees, for the offices of district judges of the Nineteenth Judicial District, Parish of East Baton Rouge.

"In my opinion, your Committee has no authority, under the law, to order the holding of a Second Primary for the reasons set out in the opinion of the Court of Appeal." (Italics mine.)

On page 12 of his brief in this Court, the Attorney General, after quoting from the opinion in the McBurney case, states: "The provisions of *Act 35 of 1916* are *substantially* the *same* as those in the *present statute*, so that the decision applies with equal force to the present case with which it is identical." (Italics mine.)

As a matter of fact, neither Act 35 of 1916 nor Act 97 of 1922 contains the provision found in Section 76 of Act 46 of 1940 that the Committee in charge of the particular primary election shall certify, as the nominee, the candidate who received "the greatest number of votes". Therefore, the McBurney case and the ruling of the Attorney-General based thereon are not in point here, because the questions raised in this case under the particular language of Section 76 of the primary law are res novo.

The defendants have cited the case of Porter v. Conway, 181 La. 487, 159 So. 725, 735. In that case one of the candidates for nomination to the office of Supreme Court justice claimed the nomination under the primary election law as a result of the death of his opponent immediately preceding the holding of the election. He also contended that even though the election was held after the death of his opponent, as he had received more votes than the deceased, he was entitled to be declared the nominee of the Democratic Party in the general election for the office in question. The Committee refused to declare him the nominee and called another primary election to select the Democratic nominee. The complainant then instituted suit and the district judge awarded him the nomination. By a divided Court, we granted writs, with a stay order, and the complainant then entered the primary election as a candidate and was defeated. Later, when the case came up for hearing in this Court, the plaintiff abandoned the suit as a moot one. The members of this Court who granted the writs with the stay order, in assigning their reasons for doing so, pointed out that clearly the candidate was not entitled to the nomination on either ground urged, and that the Committee had properly followed the primary election law in refusing to recognize him as the nominee and ordering another primary to designate the Democratic nominee. It was the opinion of these members of the Court that unless the statute granted the nomination to plaintiff, the Court should not by doubtful and strained construction award it to him, and that the people should be afforded their right to choose their nominee in a primary election so that he might enter the general election for the office he was seeking. It was stated therein:

"The right of the people to choose their public officials is evidently regarded as sacred by the Legislature and the law has protected that right with many safeguards.

"Courts should be reluctant to place a technical construction upon ambiguous provisions of the Primary Law that would tend to defeat the purpose and spirit of the statute, i. e., nomination by direct primary election. Obvious reasons of public policy dictate that only in instances wherein the law expressly, specifically, and clearly provides that the electorate shall not

have the right to elect their officials, should the people ever be deprived of their right of suffrage. State ex rel. Trosclair v. Parish Democratic Committee, 120 La. 620, 45 So. 526."

The holding in this case is certainly more favorable to the plaintiff's position than that of the defendants in the instant case.

The·respondents also cite Le Blanc v. Hoffmann et al., 175 La. 517, 518, 143 So. 393. In that case the plaintiff, claiming to be a bona fide candidate for the Democratic nomination for the office of member of the Louisiana Public Service Commission from the Second District, petitioned the Court for an injunction to restrain four of his opponents from submitting the names of those to be drawn by the Committees to serve at the polls as election commissioners, alleging that they had no bona fide intention of entering the primary, but had conspired with the others to permit the use of their names so as to give certain real candidates whom they favored the chance of naming all or nearly all of the election commissioners, and that such action on their part constituted fraud upon his rights as a bona fide candidate in the primary. The defendants had complied with all of the provisions of the Constitution, the Primary Election Law, and the rules and regulations of the State Central Committee, and the Committee in charge of the election in qualifying as candidates, and no protest or objection was made to their qualifications before the Democratic Executive Committee for the Second Public Service Commission District, as expressly provided by Section 11 of Act 97 of 1922—

the Primary Election Law. The defendants filed exceptions to the jurisdiction of the court ratione materiae and exceptions of no right and no cause of action. They further pleaded that as they had fully complied with all of the provisions of the law and the proper 'Committee had certified their names to the Secretary of State, as candidates, and no one had protested or objected to them as candidates, before the proper Committee, as required by Section 11 of the statute, that neither the plaintiff nor any other person had the legal right or interest to impugn their motives. The trial judge referred the exceptions to the merits and during the course of the trial, the plaintiff called one of the defendants to the stand for the purpose of cross-examination and asked him a question concerning his good faith as a candidate. Counsel for the defendants promptly objected on the ground that the court was without any jurisdiction to inquire into the bona fides of the defendants and that the question was not responsive to any proper allegation in the petition. The objections were overruled, whereupon counsel for the defendants admitted, subject to his objections and with all reservation of his rights under the exceptions, that if the defendants in the case were placed on the stand and examined, they would testify that they were not bona fide candidates but had qualified for the purpose of securing commissioners for other candidates whom they favored. The trial judge issued an injunction and restrained the defendants as candidates from submitting the names of voters to be placed in the receptacles for the purpose of drawing

them as commissioners to serve in the election. The defendants applied to this Court for writs. By a divided Court, it was held that as the plaintiffs had failed to protest to or object to the qualifications of the defendants before the Democratic Executive Committee, as specially provided by the provisions of Section 11, Act 97 of 1922, the Primary Election Law, which required such objection to be made within five days after the last day for filing the notification to become a candidate, and in view of the fact that that section also expressly stated that in the event the Committee should determine that the candidate was qualified, its decision would be final, the Court was without jurisdiction to inquire into the intention or motive of the candidates in qualifying. It was stated that for the court to accept jurisdiction by construing the provisions of Section 11 otherwise, it would be in effect amending the law which the court should not do, even though the action of the defendants constituted a reprehensible practice. Briefly, a candidate who had complied with all of the requirements of the statute could not be disqualified in any other way than as specifically provided in the statute, and the court should not, under the theory of interpreting the statute, in effect, amend it by creating an additional method of disqualifying candidates. This authority, therefore, is also not favorable to the defendants' contention.

Judge Fitch is clearly without any standing in Court, because he did not receive a majority and was not one of "the two highest candidates in the first primary"

other than the nominee and, therefore, under Section 80, he was not entitled to enter a second primary against the others. Edwards v. Daigle, supra.

Judge Holcombe, having received the highest number of votes and a majority, under the clear and express provisions of the statute, is entitled to be declared a nominee. Judge Fitch, having failed to receive a majority of the votes and less votes than Judges Jones and Womack, who did receive majorities, is eliminated from the contest and is without any right or cause of action under the Primary Election Law (Section 80) to demand a second primary. The Legislature has not authorized the election officials or the courts to declare that the candidate who received a majority but only ran second in the election to be entitled to the nomination for the other of the two offices to be filled. Therefore, in certifying Judge Jones as one of the nominees and refusing to call a second primary with Judges Womack and Jones as the candidates, the Committee acted without right or authority under the law and contrary to its provisions.

Much speculation has been indulged in in the briefs and arguments as to what would be the proper holding under the statute in the event a second primary failed to designate sufficient party nominees for dual and plural offices in order to enter the general election. Of course, there may be cases arising where there are extraordinary circumstances and facts which the Legislature did not anticipate and foresee and, therefore, failed to provide for in the primary law. For instance, it is said there

is no provision authorizing the Committee to call a third primary. Necessarily, such case would present a different legal question than the Court is presently confronted with, because the primary law does authorize the Committee to call a second primary, Section 80. The jurisprudence is clear that the rights of persons participating in primary elections are purely statutory, so that if the complainant is unable to show to the Court that he is being denied a right under the statute by the Committee, the Committee, through the State Central Committee, under Sections 7, 14 and 19, is authorized and empowered to act provided their action is not contrary to or inconsistent with the provisions of the primary law and the Constitution. So where the statute is silent and does not cover the case, the State Central Committee, under Section 7, is authorized to provide for the election or selection of the nominee, because the Committee would not be depriving anyone of a right granted him by the primary law and would not be acting contrary thereto. However, that cannot be said in this case, because there is a provision authorizing the Committee to call a second primary to elect party nominees and the Committee would be acting contrary to or inconsistent with the provisions of the statute if it declined to do so.

I respectfully concur in part in the prevailing opinion and dissent in part therefrom, as herein stated for the reasons assigned.

FOURNET, Justice (dissenting).

In the recent Democratic primary election held September 8, 1942, there were four candidates, Charles A. Holcombe, W. Carruth Jones, Leslie A. Fitch, and James D. Womack, seeking Democratic nomination for the offices of the two district judges of the Nineteenth Judicial District Court. There were 14,345 electors of the district who cast ballots for these offices, each voting for two of the candidates under the provisions of Section 72 of the Act under which the election was held. (Act 46 of 1940). The Democratic executive committee after tabulating the returns of the election showing Holcombe had received 8,025 votes; Jones, 7,855; Womack, 7,530; Fitch 5,280, certified the names of the first two to the Secretary of the State as the Democratic nominees.

Womack, who also received a clear majority of the votes cast, contending that under the provisions of the primary law of this state he is entitled to enter into a second primary election with Jones for one of the offices, instituted these proceedings.

The issues presented for our determination in this case are res novo never having been adjudicated upon by this court. In disposing of them the trial judge dictated into the record his reasons, which in my opinion, when considered with the history and background of our primary election laws, are logical and reasonable and in keeping with our Democratic form of government—the people should be given an opportunity to determine for themselves which of the two candidates they prefer to serve them in this important office. The pertinent part of the judge's reasons are as follows:

"The matter is one of great importance, and there are many serious issues in it, and the case is one that should go to the Supreme Court and be settled once and for all under the present primary law, and if clarification is needed, the Legislature should give attention to the matter at its next session, because this whole question of plural candidates is open to great confusion, as I see it, in these various provisions of the statutes.

"First of all I will pass on the exceptions. All of the defendants except Fitch have filed exceptions to the jurisdiction of the Court, exceptions of no right of action, and exceptions of no cause of action. Those three exceptions raise the same questions that are raised on the merits of the case, the principal point being, Is the plaintiff entitled under the law to demand a second primary? If he is not, the Court would lack jurisdiction to order one. Similarly, the plaintiff might be said to be without cause of action or right of action. Since those exceptions raise the same points as are raised on the merits, I will consider them along with the case on its merits and will refer them to the merits.

"The Committee, I believe, filed an exception of misjoinder of parties and of causes of action. That exception is not well founded, in my opinion, and I will overrule it.

"The Primary Law confers very broad jurisdiction on the courts of the State in connection with the enforcement of the provisions of that law. It also outlines the procedure for contests based on irregu-larities and fraud, and the general spirit of the act is, as I see it, that the Courts have power to issue any necessary writs or decrees to carry out the purposes of the law, namely, to insure fairness in primary elections and see that the will of the people is properly recorded.

"In my opinion, the various complaints made by the plaintiff all relate to the same matter. His principal demand is for a second primary between himself and the defendant Jones. All the other matters relate to that main proposition. In other words, he seeks an injunction against the Secretary of State to prevent him from using the previous certification of the Committee. That pertains to the main cause of action. He seeks a mandamus against the Committee to order it to certify himself and Judge Jones as the candidates in the second primary. He seeks a mandamus against the Secretary of State to compel him to certify to the Committee the returns as compiled by the Secretary of State. The purpose of that is in aid of the main demand.

"Furthermore, the modern trend is against technicalities in pleadings wherever the court can avoid them. The theory, today, is that courts of justice are open to hear all complaints of litigants and to remedy those complaints if they are found to be well founded, and not to encourage technicalities of one kind or another that have a tendency to obstruct the trial of cases on their merits. To force the Secretary of State into one suit against him, the Committee in another suit, and the candidates in another suit, would provoke a

needless multiplicity of suits. Therefore, I overrule the exception of misjoinder of parties and actions.

"There was a plea of estoppel filed by Holcombe against Fitch's demand in his answer for a second primary to be participated in by all four candidates. That plea of estoppel is based on the fact that Fitch was a member of the Committee and, through proxy, voted for the resolution which the Committee adopted. Fitch acted in his official capacity as member of the Committee, not as an individual candidate. He naturally followed the opinion of his legal adviser, the Attorney General, and I do not think it is fair to say that when a public official, acting in a public capacity, following the opinion of the State's highest law officer, does some act to carry that opinion out, he should be bound in his individual capacity and estopped from asserting such rights as he might have as a candidate. The plea of estoppel is overruled.

"The defendant Holcombe filed a plea of prescription against Fitch's demand for a second primary. That demand was filed by Fitch for the first time in his answer to the suit, which was filed more than two days after the resolution of the Committee was adopted, in fact, some six or seven days afterwards.

"The plaintiff abandoned, at the outset of the trial, his demand for a second primary to be participated in by all four candidates. The plaintiff had acted in time, but with his demand abandoned, the defendant Fitch's demand must stand on its own bottom, and I think that plea of prescription is well founded and should be sustained, and that there should be judgment dismissing the demand of Fitch for a second primary to be participated in by all four candidates.

"That brings us to the consideration of the exceptions of no cause of action and no right of action, and lack of jurisdiction, along with the merits of the case.

"The principal point in the case is whether the plaintiff, Womack, is entitled to participate in a second primary with the defendant Jones. All parties, as far as the record now stands, concede the election of Judge Holcombe under the wording of the primary law. I think they are all correct in that conclusion. So the sole matter for the Court to determine is whether the Committee was correct in certifying both Judge Holcombe and Judge Jones as nominees for the office, or whether the Committee should certify only Judge Holcombe and order a second primary to be held between Judge Jones and Judge Womack.

"Now, that point turns on the interpretation to be given to Section 76 of the Primary Act, which is Act 46 of 1940. That section contains two paragraphs. The first paragraph deals with certain named officers, namely, United States Senators, Congressmen, State officers voted for throughout the State and throughout the respective Congressional districts and Supreme Court districts, State boards and commissions, and any other state officers whose election is provided by law, and it requires that in those cases the Secretary of State shall tabulate and compile the returns and pro-

mulgate them and forward a certified copy to the chairmen or secretaries of the committees which ordered the primary. It shall be the tabulation to be used by them.

"It then goes on and provides that immediately upon receipt of such certification it shall be the duty of the chairman or secretary to convene the committee to declare the nomination of the person, or persons, shown by the certification of the Secretary of State as having received the greatest number of votes. It further provides that it shall certify the name, or names of such person, or persons, to the Secretary of State.

"The following paragraph provides that in all other primary elections, instead of using the returns compiled by the Secretary of State and certified to the Committee, the Committee itself shall compile and tabulate the vote from the returns received by it and certify the result from those returns, rather than from the returns of the Secretary of State. Otherwise, there is no distinction between the two paragraphs of Section 76.

"So that in the final analysis the matter turns on the meaning of the words 'declare the nomination of the person or persons who received the greatest number of votes.' Can more than one person running in the same election for plural offices of the same kind receive 'the greatest number of votes'? If that section means that the Committee shall certify, where there are two officers to be elected, as here, the two with the greatest number of votes—if that expression can be grammatically used—then, of course, the Committee is correct. If there

can be only one candidate with the greatest number of votes in a situation of this kind, then, of course, the Committee was incorrect, and its duty was to certify only the top man.

"There are a great many factors to be considered in determining the meaning of this section. Of course, we have an unusual situation here. Three men have actually been elected to two offices. That is, there were two judgeships to be filled and the voters have by majority vote elected three to fill two offices, which is impossible.

"The first factor to be considered would be the meaning of the language as used. Grammatically speaking, it is impossible for two candidates for the same office to receive the greatest number of votes. Greatest is the superlative and, of course, means only the top. I say it is impossible for two to receive the greatest number unless, of course, there is a tie. If there is a tie, there may be more than one person receiving the greatest number of votes. The Legislature has used the term in the superlative. The Court would have to indulge in a certain amount of judicial legislation to add the comparative. On the other hand, we have to give some meaning to the words 'person, or persons' and the expression 'name, or names, of such person, or persons,' but if we read that in connection with the entire paragraph—the first paragraph of Section 76—it seems to me that the meaning is fairly clear, because in connection with this certification of the nomination of 'the person, or persons' and the certification of 'the name, or names,' reference is made to certain returns received by the committee,

or committees, and those returns relate to all those various offices mentioned in the first sentence of Section 76, namely, United States Senators, Congressmen, and State officers voted for throughout the entire State and respective Congressional Districts, and Supreme Court Districts, or State boards and commissions and other state officers.

"In other words, taking the paragraph as a whole, it would appear that what the Legislature said was that the Secretary of State shall send these various compilations to the chairmen of the respective committees, and, of course, they receive them; and if it is merely to fill one office only, in that event the committee certifies only one person. Therefore, it would be 'a person.' On the other hand, some committees would receive returns on numerous offices, and therefore they would have to certify not one name, but many names of persons who have received the greatest number of votes for those different kinds of offices.

"The plural office proposition, as you have it here, is a rather peculiar thing. The law provides that they are not to be considered separately and independently of each other. Unfortunately, the Legislature has not provided, as it has in New Orleans, for separate divisions of the court, where each candidate runs for one office only. In this situation, where you have plural places involved, all candidates run for both. So, therefore, Judge Holcombe ran for both offices, Judge Jones ran for both offices, Judge Womack ran for both offices, and Judge Fitch ran for both offices, and three

of them were elected to two offices by majority vote. You cannot, however, say that more than one person received the greatest number of votes, because Judge Holcombe, as he was running for both offices, necessarily received the greatest number of votes for both, and Judge Jones necessarily ran second for both offices, rather than second for one and first for the other, because if we construe it in the latter way, we would be making them separate offices, whereas, the law considers them together and not independently. So it seems to me, from any grammatical construction which you can put on it, the Legislature has said that where you have separate offices such as district attorney, judge, or school board member or in the case of the committee having jurisdiction over state offices such as Register of the Land Office and Secretary of State and so on, then they take the man receiving the highest number of votes, or the greatest number of votes, as the statute says for each office, and certify him.

"If the Committee has only one office under its jurisdiction, it certifies one name; if it has these various offices, it certifies the highest man for each place. Of course, the Legislature may have intended it would include plural offices, in spite of the grammatical construction, but it has not said so clearly, and it would be inconsistent with the theory of plural offices, as I see it, and at best it looks like a hiatus in the law.

"Unfortunately, there are so many things to be considered by the Legislature in adopting these long statutes that the mem-

bers and committees cannot think of every situation that might come up.

"With respect to the authorities, there is really no Supreme Court decision interpreting this provision, so it is really from the standpoint an open question.

"There has been cited to the Court the case of McBurney versus McGregor, decided in 1920, where four candidates were running for the Legislature and three of them received a majority. The Committee certified two names, and the District Court and the Circuit Court sustained the committee. If that decision were strictly in point, I would feel, as a district judge sitting in this parish, bound to follow it, but the point in that case construed the primary law in existence at that time, which was Act 35 of 1916. Now, Act 35 of 1916 did not have in it this requirement that the Committee certify the name or names of the person or persons shown as having received the greatest number of votes, and there was no such language in the statute at that time. That language was put into the law for the first time by, I think it was, Act 8 of the Second Extra Session of 1934. So that Court of Appeal, when it construed the 1916 act did not pass at all on the proposition which the court here is called upon to pass on today.

"The decision, therefore, would only have a bearing if the present statute did not have this requirement in it.

"On the other hand, there has also been cited to the Court the case of Bauer v. Gilmore, which involved a legislative race in the Parish of St. Mary in 1936. There were three candidates there, and all three received majorities, so the Committee was faced with the same situation and it asked for an opinion of the Attorney General. The Attorney General, giving his opinion under this new provision of the law which has been inserted in 1934, advised the Committee to certify the name of the top man only and to order a second primary between the other two. The Committee followed that advice and the candidate who received the highest vote was certified, and then a lawsuit resulted between the other two; Bauer filing suit against Gilmore. The Court of Appeal dismissed the suit because of lack of a necessary party defendant. The committee was not made party to the suit. So the decision is not in point. Nevertheless, it may have some persuasive effect, for this reason, that the ruling was made under the new law and it was made a matter of judicial record in this case.

"Subsequently, the plaintiff in that suit, Bauer, was elected and served as Speaker of the House, and this primary law of 1940 came before that same session. In a matter of so much public interest it would appear that if the Legislature wanted to change this law as thus interpreted it would have done so, but it not only did not change the provisions, but re-enacted this particular sentence in the identical language. If that had been a Supreme Court decision, instead of a ruling of the Attorney General rendered to the Committee and put into operation, there would be no question but that it would amount to a legislative ratification of that interpretation. In other words, where the Supreme Court interprets the law and the Legislature meets later

and does not change it, the recognized rule is that the Legislature has approved the interpretation of the Supreme Court.

"However, this was not a Supreme Court decision, and the Attorney General's opinions do not have the same force. Nevertheless, I may construe this provision in the light of that history, which is very persuasive, even though not conclusive. So that with one case cited to the Court having reference to an old statute which did not have this provision at all, and the other case which did not decide the point, but nevertheless has some persuasive effect, the authorities, if they may be called such, may be said to support, even though weakly, plaintiff's position in the matter.

"Now, there is one final factor which I think should be controlling in the light of the other factors, and that is this: Wherever possible, the Supreme Court has always construed the primary law to give as much latitude as possible to the people in the selection of their public officials. Here you have two possible interpretations of the statute, one, in my opinion, sounder than the other; but granting for the sake of argument that both are of equal weight, it would seem to me that in determining which interpretation to adopt, the Court should take that interpretation which gives to the people in a Democratic government full and free power to select their public officials rather than that which vests the determination of that question in a committee or in the court.

"In other words, if both interpretations are entitled to equal weight, the people should be the ones to determine the candidate rather than the committee or the court, and I think that is particularly true in days like these when Democratic government is fighting for its existence. Of course, if the statute were clear and open to one construction only, the Court would be bound to accept that construction, whether it took that power away from the people or not. If the statute were clear in reserving it to the people, the Court could not take it away, even though the Court thought it should. But where you have two constructions equally sound, certainly the primary law should be resolved that way which would leave to the voters of the State, in this instance of this parish, freedom to determine which of the candidates they wish to serve as their official.

"There is one other serious point, and that is the argument made by the defendants that the primary law does not provide for a second primary in cases of this kind. It is argued that Section 80 provides for second primaries only where no candidate receives a majority. That section, too, is badly worded, because it begins by saying: 'If any candidate has failed to receive a majority of votes cast' there shall be a second primary. If that is taken literally, there must be a second primary wherever there is a first primary. There is always some candidate who does not receive a majority. That would be a ridiculous interpretation to put upon that language. Taking the section as a whole, it means wherever there has been no choice in the first primary there must be a second primary.

"I think that section must be construed along with Section 76. The usual rule is

that all sections must be construed with reference to each other. If Section 76 means that the committee can only certify the top man, the man with the greatest number, then Section 80, in the light of that, means wherever there has been no choice by virtue of the fact that there has been only one man with the greatest vote and there is still some position to be filled, then there is no majority within the meaning of the statute, and a second primary must follow. Otherwise, you would have a situation where it would be impossible to fill the second position, and the Legislature could not have contemplated any such result. In other words, construing both sections together, I think Section 80 means that where there has been no choice in the first primary as required by the statute, then there must be a second primary in order that the people may make that choice.

"Considerable time during the argument was given to the question of whether this was a state or local office. Very strong argument has been made that since judges perform state functions they are state officers within the meaning of the act. Also, a strong argument has been made that local offices are defined in a restricted way in this statute, and the Court must apply that restricted meaning of local offices; and, therefore, the judges come under the heading of state officers.

"Frankly, I do not see that it is necessary for the Court in this case to determine that point. The evidence shows that the returns compiled by the Secretary of State and the returns compiled by the committee show exactly the same result. There would be nothing but a waste of time gained by requiring the Secretary of State to compile these returns and certify them to the committee and then require the committee to make a new certification. It would only entail delay and result in no good, and the law abhors delay in cases of this kind. The statute provides for a speedy trial and a speedy determination of the issues in order that the primaries may be held within the time fixed by law. If the matter has to go back to the Committee, there might not be time to go through the formality of a new certification and a new law suit.

"The evidence shows that the Secretary of State has never compiled the returns for judges throughout the state. I see no reason to disturb the Secretary of State's administrative interpretation of that provision over a long period of time.

"If the first paragraph of Section 76 and the second paragraph of Section 76 were different in their provisions in so far as the certification of nominees is concerned, that is as to who should be certified, then it would be necessary to pass on that question, but as I read that whole section, there is no difference between the proceedings in the first and second paragraphs except as to what compilation shall be used by the committee. Since both compilations show the same result, and since the Secretary of State has never compiled the returns for elections for judges, I am of the view that it is not necessary to determine that question, in this case, and that it is not necessary to disturb the practice which has been in force so long.

"I think, therefore, that the exception of no right of action, no cause of action and

lack of jurisdiction should be overruled, and that there should be judgment for plaintiff in conformity with this opinion. The Judgment will be prepared by the parties in accordance with the practice in this district."

I therefore respectfully dissent from the majority opinion.

PONDER, Justice (dissenting).

In my opinion, Womack is entitled to enter a second primary with Jones under a literal construction of the statute. I cannot subscribe to the majority opinion of the court for the reason that it is to a large extent based upon what the court thinks the Legislature intended rather than the actual wording of the statute. Under such circumstances, I sincerely believe that a second primary should be ordered, and the people permitted to decide which of the candidates they desire to serve them as district judge.